**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE TUCKER FIRM, LLC, IL,           )
                                    )
            Plaintiff,              )
                                    )
        vs.                         )  No. 11 C 1089
                                    )
KIMBERLY ALISE,                     )  Chicago, Illinois
                                    )  May 14, 2013
            Defendant.              )  9:22 A.M.

            TRANSCRIPT OF PROCEEDINGS - Motion
  BEFORE THE HONORABLE JEFFREY T. GILBERT, Magistrate Judge

APPEARANCES:

For the Plaintiff:        THE TUCKER FIRM, LLC
                          1723 North Halsted Street
                          Chicago, Illinois  60614
                          BY:  MS. DEBRA JEANNINE TUCKER

For Defendant Alise:      McDONALD HOPKINS LLC
                          300 North LaSalle Street
                          Suite 2100
                          Chicago, Illinois  60654
                          BY:  MR. PETER TODD BERK

For Defendant McDonald    CLAUSEN MILLER P.C
Hopkins and attorney      10 South LaSalle Street
respondents:              Suite 1600
                          Chicago, Illinois  60603
                          BY:  MR. GEORGE K. FLYNN


                PAMELA S. WARREN, CSR, RPR
                 Official Court Reporter
                219 South Dearborn Street
                      Room 1928
                Chicago, Illinois   60604
                     (312) 294-8907

**NOTE:  Please notify of correct speaker identification.
FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS
UNINTELLIGIBLE.**

**APPEARANCES: Continued**

For West Suburban:        MR. CLINTON JUD IND
                          161 North Clark Street
                          Suite 4700
                          Chicago, Illinois  60601

 1     (Proceedings held in open court:)

 2          THE CLERK:  11 C 1089, The Tucker Firm, LLC versus

 3     Alise.

 4          MS. TUCKER:  Good morning, your Honor.  I'm Debra

 5     Tucker on behalf of The Tucker Firm --

 6          THE COURT:  Good morning, Ms. Tucker.

 7          MS. TUCKER:  -- LLC and myself.

 8          MR. IND:  Good morning, your Honor.  Clinton Ind,

 9     I-n-d, on behalf of the subpoena respondent West Suburban.

10          THE COURT:  Clinton?

11          MR. IND:  Ind, I-n-d.

12          THE COURT:  For West Suburban.

13          MR. BERK:  Good morning, your Honor.  Peter Berk on

14     behalf of Kimberly Alise.

15          THE COURT:  Good morning, Mr. Berk.

16          MR. FLYNN:  Good morning, your Honor.  George Flynn on

17     behalf of the McDonald Hopkins law firm and its individual

18     attorneys who are respondents (unintelligible).

19          THE COURT:  Okay.  Good morning, everybody.  Couple of

20     procedural things.  Okay.  Number one, I got a call yesterday

21     late afternoon from someone asking us to have a court reporter

22     here today.  We are unable to get a court reporter from our

23     pool of court reporters on late notice.

24          Our sound system is very good.  So if anybody is going

25     to want a transcript of this, you should make sure that when

1  you're speaking, you speak into the microphone.  We can get

2  transcriptions fairly quickly.

3        It is not my -- it is my practice sometimes to have

4  court reporters present sometimes, sometimes not.  If you all

5  are going to want court reporters, you should give us better

6  notice than just the afternoon before for a motion.

7        Was it you, Mr. Berk, who called or your associates --

8        MR. BERK:  It was our -- and we understand that there

9  is a recording process, so if there was not a court reporter,

10  we understand you can get to the recording, it is not an issue

11  for us, your Honor.

12        THE COURT:  Right.  It is easier, particularly with

13  multiple counsel, if we have a court reporter.  I will say that

14  generally if people are asking for a court reporter then they

15  are going to write the transcript.  But if you are not going to

16  write the transcript, then I would suggest having a court

17  reporter is not a necessary -- necessary exercise.

18        There is a limited amount of the court reporters.

19  We're in a budget crisis, so people are sensitive about that in

20  terms of how they get around to the courtrooms, number one.

21        Number two, I'm going to dispense, at least for the

22  time being, with this artifice of motions for leave to file

23  motions.  I understand that Judge Darrah instituted that

24  because he felt he was getting inundated with motions that

25  potentially or were not well founded or were unnecessary.  I

1    found it difficult to go through the entire docket to figure

2    out what motions for leave to file had been granted, so that a

3    motion was now in front of me as opposed to the -- just the

4    motion for leave to file being out there.  I'm going to deal

5    with what I think are some of the motions for leave to file.

6            I have looked at some, but not all, of what's been

7    filed.  And I will say that I think some of the arguments and

8    positions being taken by the parties are ridiculous.  Okay?

9            So instead of having motions for leave to file, and

10   then trying to decide whether the motion should be granted, I'm

11   going to tell both sides right now that if I find people

12   abusing the process and abusing coming in front of the Court,

13   I'm going to award sanctions.  I don't like awarding

14   sanctions.  I think it becomes satellite litigation inside the

15   litigation.  But I don't think that the motion for leave to

16   file artifice stopped you all, counsel, from filing things that

17   shouldn't have been filed.  And maybe if you have to pay the

18   other side attorneys's fees for coming in here on things that

19   you shouldn't be coming in here on, that might change

20   behavior.  Okay?

21           I'm familiar with the case, as you all know from your

22   prior times in front of me.  And if you can't govern

23   yourselves, then perhaps sanctions is a way to go.

24           Ultimately the Court has the power to award sanctions

25   of striking claims or counterclaims.  And I'm telling you right

1  now that if -- if practices continue as I see them happening

2  now, those are recommendations I'm going to make because I

3  think you ought to focus on getting this case tried, if you can

4  get it tried, and being responsible to discovery to the extent

5  you can be.  Okay?

6          Let me deal procedurally with I think our some motions

7  for leave to file that are still out there so that you can get

8  whatever you want to get filed filed.  It looks to me, and I'd

9  like you to take notes here because if I am missing something

10  you have to tell me, it looks to me that Docket Entry 185,

11  which is Alise's motion to quash three deposition subpoenas or

12  for a confidentiality order, I don't see any order granting

13  that motion for leave to file.  But I actually see a response

14  to that.  So was that filed?

15          MR. BERK:  That was granted, your Honor.  He granted

16  leave to file.  He did grant their response and set a briefing

17  schedule for our reply, which is due, I believe, on the 24th.

18  It is unclear, at least to me, whether that's in front of your

19  Honor or Judge Darrah, since the referral came after that

20  motion was scheduled to be briefed and he set a ruling date on

21  the 19th, but it is unclear whether he meant to send that

22  motion to you or not, I just don't know.

23          THE COURT:  Did he send me all discovery motions

24  essentially?

25          MR. BERK:  He did, but I think it is all -- he

1  referenced certain ones in the order referring it, and all

2  future.  The quash was before.  So I was unclear.  If it is

3  before you, that's fine, your Honor, we'll send the courtesy

4  copies to you.  I just want to make sure it goes to the right

5  person.

6           THE COURT:  Well, you don't have a hearing date in

7  front of him on that, right?

8           MS. TUCKER:  It was the same --

9           MR. BERK:  It was same --

10          MS. TUCKER:  -- hearing that the referral was granted,

11 and it said all discovery disputes, all future motions and

12 discovery disputes.

13          THE COURT:  Yeah, I'm going to -- my reading of his

14 order was he -- in the words of Vinnie, in My Cousin Vinnie, as

15 he finished with the witness, he got no more use for yous guys.

16          MR. BERK:  And that's fine, your Honor.  We just

17 wanted to make sure we're in the right place, that's all.

18          THE COURT:  All right.  Number 214, which is Tucker's

19 motion to compel Alise to answer interrogatories.  I think that

20 was a motion for leave to file.  I don't think that's been

21 granted yet.

22          Right, Ms. Tucker?

23          MR. BERK:  I don't believe so, your Honor.

24          THE COURT:  Okay.  That's granted.

25          Number 217, which was Tucker's motion for leave to

1   file a motion compelling Alise to respond to document

2   requests.  Hasn't been granted yet, right?

3           MS. TUCKER:  Correct.

4           THE COURT:  Okay.  That's granted.  Meaning you could

5   file it, not that the motion to compel was granted.

6           MS. TUCKER:  Your Honor, when you say that it is

7   granted, do you want us to file it again?

8           THE COURT:  Yeah.  You're going to have to file the

9   actual motion.

10          MS. TUCKER:  Okay.

11          THE COURT:  Because procedurally or administratively

12  if I am going to rule on the motion, it has to be filed as a

13  motion.

14          MS. TUCKER:  Okay.

15          THE COURT:  So -- and right now it is filed as an

16  exhibit to a motion for leave to file.

17          MS. TUCKER:  Correct.

18          THE COURT:  So just file the exhibit as the formal

19  motion.

20          MS. TUCKER:  Understood.

21          THE COURT:  Number 221, Tucker's motion for leave to

22  file a motion to compel the Guterman parties.  That is a motion

23  for leave to file, right?  That hasn't been granted yet?

24          MS. TUCKER:  Correct.

25          THE COURT:  Okay.  So that's granted.  You have to

1   file the actual motion.

2           MS. TUCKER:  And your Honor --

3           THE COURT:  And then --

4           MS. TUCKER:  I'm sorry.  To be clear, I know that you

5   are headed out of town --

6           THE COURT:  Uh-huh.

7           MS. TUCKER:  -- and your standing orders require three

8   days's notice.  Do we have permission to notice these up for

9   the hearing that we already have before you on Thursday?

10          THE COURT:  No.  I mean, I have to deal with the

11  Thursday hearing.

12          MS. TUCKER:  Okay.

13          THE COURT:  But I want you to file the actual motions,

14  and then I think we're going to try to deal with dates by which

15  responses will be filed to any of these that need responses;

16  replies, if they need replies; and then hearing dates.  And the

17  hearing dates are going to be in June.  So -- but I'll deal

18  with what we have -- I'm not exactly sure what we have on

19  Thursday.  But if we can get deal with at least whatever is up

20  on Thursday, I'd like to deal with that today too and not have

21  you have to come back.

22          MS. TUCKER:  Okay.  So when we file --

23          THE COURT:  Just file the motion --

24          MS. TUCKER:  -- the motions.

25          THE COURT:  -- without any notice of motion.

1    MS. TUCKER:  Okay.

2    THE COURT:  In other words --

3    MS. TUCKER:  Understood.

4    THE COURT:  -- the motions to compel or to -- the

5  motions to compel that you were seeking leave to file, file

6  those motions, do not notice them up yet.  Just let's get them

7  on the record, and then they will come up with a little gavel,

8  which means they need a ruling.

9    MS. TUCKER:  Okay.  Understood.

10    THE COURT:  Okay?  But we'll deal with when they are

11  going to be heard.

12    MS. TUCKER:  Uh-huh.

13    THE COURT:  And then procedurally it looks like Docket

14  Entry 219, which is -- which was filed by plaintiff is a

15  duplicate -- the .PDF that is attached to Docket Entry 219 is

16  actually --

17    MS. TUCKER:  Your Honor --

18    THE COURT:  -- the .PDF that is 217.

19    MS. TUCKER:  -- that is a duplicate, and she -- my

20  legal assistant is working this morning to remove that.

21    THE COURT:  Okay.  So my -- well, my order will say it

22  is stricken.

23    MS. TUCKER:  That's fine.

24    THE COURT:  219 is stricken as duplicative of 217.

25    MS. TUCKER:  Absolutely.

1        THE COURT:  Okay.

2        MR. BERK:  Your Honor, there are two other motions

3   that there was leave requested and granted.  Plaintiff

4   requested time to respond.  Judge Darrah granted that.  They

5   have actually filed responses, but there is no actual motion on

6   file.  I actually called your courtroom deputy yesterday just

7   to see, and it was suggested that we discuss that today.  It is

8   a motion to compel plaintiff to respond to document request --

9   certain document requests, interrogatories, and it is a motion

10  to compel a third party, the Nathanson law firm, to respond to

11  subpoena.

12       Those two motions, leave to file was granted.

13  Ms. Tucker, plaintiff, has filed a response to each of those.

14  But I understand that there is a motion on file.  I don't know

15  how you'd like to proceed, whether you'd like to actually file

16  a motion, have her file the response, and then we will reply or

17  how you would like to proceed on that.

18       THE COURT:  Well, it looks to me like Alise's motion

19  to compel Tucker to respond to discovery, which was Docket

20  Entry 188, leave to file was granted.  So I'd like you, Alise,

21  to actually file your motion.

22       MR. BERK:  Right.  That's what I wanted to check.

23       THE COURT:  And then I have seen Tucker's response to

24  that motion, which I think leave -- you were given leave to

25  file.

1    MS. TUCKER:  Yes, and we did file.

2    THE COURT:  Okay.  So you should file of record your

3    motion to compel --

4    MR. BERK:  Okay.

5    THE COURT:  -- on the discovery responses.

6    MR. BERK:  Right.

7    THE COURT:  And you should also file of record your

8    motion to compel the Nathanson law firm leave to which you were

9    given -- leave to file which you were given.

10   MR. BERK:  Right.  The issue, your Honor, is our

11   understanding of how Judge Darrah wanted to proceed is not to

12   attach hundreds of pages of motions, exhibits.  We didn't

13   attach actual motion, we filed.  So it is going to look

14   different than the motion for leave.

15   We had asked him previously what do you want in the

16   motion for leave, and he said I want the detail about why you

17   need it.  But he made it clear to us, at least from our point

18   of view, that he didn't hundreds of pages attached to it and

19   things like that that would be coming like in the motion to

20   compel.  So it may look different.  And I'm concerned -- she

21   has already filed a response, so I don't know how you want to

22   deal with that.  I just want to be clear on the record as to

23   what we're going to do.

24   THE COURT:  Well, she's filed a response on -- she's

25   filed -- Tucker has filed a response on Nathanson.

1       MR. BERK:  Yes.

2       THE COURT:  I'm going to deal with Nathanson this

3   morning.

4       MR. BERK:  Okay.

5       THE COURT:  And I'll take into consideration what you

6   have just said.

7       MR. BERK:  Yes.

8       THE COURT:  Ms. Tucker has also filed a response on

9   the motion to compel or to respond to discovery.

10      MR. BERK:  Yeah.

11      THE COURT:  And you're saying that would look

12  different too?

13      MR. BERK:  Yes.  I believe that would look different,

14  your Honor.

15      THE COURT:  Okay.

16      MR. BERK:  Because what was in the motion for leave

17  was an explanation (unintelligible) was referred and why we

18  needed it, it did not go through, other than an attached letter

19  to soft of explain where the parties were at, it did not go

20  through each request which your Honor may want in -- or I would

21  assume a court, whether it was you or Judge Darrah at the time,

22  would want a sort of more explanation of it.  We certainly will

23  try to make it look as much like the motion as possible.  We

24  don't want to delay the process.

25      THE COURT:  Well, okay.  On the -- to the extent that

1    you had been given leave to file -- that Alise has been given

2    leave to file the motion to compel Ms. Tucker to respond to

3    certain discovery and to the extent that Alise has been given

4    leave to file a motion to compel the response to the subpoena

5    to the Nathanson law firm, now that you have been given leave

6    to file those motions, you should file your motions --

7                MR. BERK:  Yes.

8                THE COURT:  -- as you want them to look of record.

9    All right?

10               MR. BERK:  Yes.

11               THE COURT:  To the extent that Ms. Tucker needs to

12   respond to that again, we can deal with that.  To the extent I

13   need to set it for hearing, I'm going to deal with that.

14               The only motion that I actually set for hearing this

15   morning formally was the motion to compel West Suburban.  I'm

16   prepared to deal with that.

17               However, because you were given leave to file the

18   motion to compel with respect to Nathanson, because that's a

19   third-party subpoena, because I think it suffers from the same

20   defects as the motion to compel West Suburban, I intended to

21   deal with those today.  And I'm going to deal with them today

22   to the extent I can both -- both procedurally and potentially

23   substantively.  Okay?

24               MS. TUCKER:  And, your Honor, there are some motions

25   that we're missing because you mentioned a motion to compel

1    Guterman parties.  There is a motion to compel Guterman's

2    business personnel, which are located at three companies.  And

3    then there was a motion that we filed yesterday to compel

4    Guterman ECDS and Malo, that you referenced Number 221.  I'm

5    not -- I'm not sure if that is the Guterman parties and the

6    terms of the outsourced business personnel or that's the one

7    that we filed yesterday with respect to Guterman himself and

8    ECDS and Malo.  But there are two separate motions with respect

9    to those groups of people.

10            THE COURT:  221 is something that's called Tucker's

11   motion for leave to file motion to compel the Guterman parties.

12            MS. TUCKER:  Okay.  Can you tell me in the motion

13   you're looking at who the Guterman parties are --

14            MR. BERK:  I have it here, your Honor.  It is Seth

15   Guterman, ECDS, and Malo the Dog, collectively the Guterman

16   parties.  That's on page 1 of Exhibit 1 --

17            MS. TUCKER:  Okay.

18            MR. BERK:  -- to the motion for leave --

19            MS. TUCKER:  So then the motion that we're missing is

20   with respect to the outsourced personnel business.  So

21   that's --

22            THE COURT:  And what -- which -- do you have any idea

23   what --

24            MR. BERK:  I believe that's covered, your Honor, by

25   the motion to quash, which is being briefed, unless I'm missing

1  -- I'm not thinking of the motion she's talking about.

2       MS. TUCKER:  Well, you only mentioned one motion to

3  quash.  There is the McDonald Hopkins personnel, and then there

4  is the outside business personnel of Guterman.

5       THE COURT:  Okay.  I have no idea what motion that

6  is.  All right?  But, you know what, let me deal with these

7  motions to compel third parties generally.  Okay?

8       You know, before I do that, let me hear briefly --

9  let's tee up the motion to compel West Suburban.  Mr. Ind --

10      MR. IND:  Yes.

11      THE COURT:  -- is here.

12      What do you have to say Mr. Ind?  I'm sorry.

13      MR. IND:  No, that's quite all right.  My client is in

14 a precarious situation.  He represents one of the parties to

15 this litigation.  There is an assertion of confidentiality of

16 the documents that are potentially producible as relevant to

17 this litigation.

18      Understanding that my client has obligations under the

19 subpoena rules, so understanding that he has obligations

20 pursuant to his client and maintaining the issues of

21 confidentiality, therein lies the reluctance of my client to

22 just outwardly produce everything that is potentially

23 responsive to these subpoenas, especially in light of the issue

24 associated with the confidentiality order -- excuse me -- that

25 is, I believe, being briefed at this point in time.  I think it

1   has been maintained throughout this litigation that as long as

2   there is a confidentiality order, then everything that is

3   potentially producible is responsive to the subpoena, will be

4   produced without any holding back aside from the potential of

5   any limited privilege issues.

6           So the position as far as West Suburban goes at this

7   point in time is there -- we really want to see some kind of a

8   confidentiality order in place such that my client is not

9   disclosing information that his client is deeming confidential

10  at this point in time.

11          THE COURT:  Uh-huh.  There is an allegation in

12  Ms. Tucker's motion that your client, and I think I hear you

13  saying essentially the same thing, your client stands ready to

14  respond to the subpoena and produce relevant -- or information

15  that's responsive to the subpoena to the extent you can

16  determine what's responsive.  But your client's client,

17  Ms. Alise, is interfering with your ability to produce that by

18  saying, don't produce it unless there is a confidentiality

19  order in place?

20          MR. IND:  Well, there is a -- it is not like Ms. Alise

21  is contacting and saying don't produce it, absolutely don't

22  produce it.

23          THE COURT:  Uh-huh.

24          MR. IND:  He is aware of the confidentiality of the

25  information.

1       THE COURT:  Uh-huh.

2       MR. IND:  And he's not producing it based on that

3   confidentiality.

4       THE COURT:  And when you say -- and when you say the

5   confidentiality of the information, is that because there is

6   any statutory protection of anything he has or he just

7   considers his communications with Ms. Alise business

8   communications, financial communications to be confidential in

9   the vernacular as opposed to -- as a trade secret or covered by

10  some type of statutory privilege?

11      MR. IND:  He is the accountant, and he has been acting

12  as the accountant, so there is an accountant privilege

13  associated with many of the communications.

14      THE COURT:  Minimal though, right?

15      MR. IND:  Well, there is a four-part test that we

16  would have to adhere to to make the statutory privilege stick.

17      THE COURT:  Yes.

18      MR. IND:  To this point in time, you know, we're

19  looking at information that is sensitive to the client.

20      THE COURT:  Uh-huh.

21      MR. IND:  So, you know, he understands that it is

22  sensitive to the client, and he doesn't want to produce that

23  because, you know, the client is -- he's aware of the client's

24  confidential -- issues associated with confidentiality of the

25  documents.

1          THE COURT:  Uh-huh.  What's the issue -- I have not

2     delved into this, but what -- is there no confidentiality order

3     in place in this case yet?

4          MR. BERK:  Your Honor, no, there is not.

5          THE COURT:  Why not?

6          MR. BERK:  The history on that is somewhat complex.

7     Back when they first subpoenaed West Suburban, we notified

8     them, among other subpoenas they sent out for very confidential

9     information, we said, we need a confidentiality order over

10    these type of materials.  The materials that I understand that

11    Mr. Ind's client has are tax returns of Ms. Alise and I think a

12    couple documents that may relate to settlement negotiations.

13    We have asserted repeatedly to Ms. Tucker our position that

14    those are confidential.  And she can have them so long as there

15    is a confidentiality order in place.

16          THE COURT:  Why are they confidential?

17          MR. BERK:  Which ones?

18          THE COURT:  Any of -- well, I mean, tax returns maybe,

19    but -- I mean, how are they confidential -- how are they

20    confidential within the meaning of the model confidentiality

21    order that this Court has adopted for use in litigation here?

22          In other words, the settlement documents.

23          MR. BERK:  There is case law that we have cited to

24    Ms. Tucker and in various letters and certainly have cited in

25    the motion to quash which says that while settlement

1  documents -- settlement negotiations are discoverable, that

2  they should be -- our reading of the case is they should be

3  discovered restricted due to the policies behind settlement

4  negotiations to foster that communication, to foster those

5  negotiations, that those type of discussions should be

6  confidential.

7          Again, we have told her from the beginning when she

8  started requesting these documents, you can have them.  This

9  came up with respect to Mr. Gutzke's subpoena.  We said it is

10 no problem, we just need a confidentiality order.  The response

11 I got from them was, we're not giving you a confidentiality for

12 anything.  Nothing is confidential.  You haven't proven

13 anything.  You haven't shown us that there would be definitive

14 harm by releasing settlement discussions, tax returns, HIPAA

15 information, things that were being requested.

16         Only when we brought a motion to Judge Darrah

17 initially for leave to file a motion for confidentiality order

18 did they finally propose a counter one.  Judge Darrah denied

19 that stating on the record that what he wanted was more detail

20 about why we needed it.  That detail has been provided in part

21 in the motion to quash briefing, because the alternative to the

22 motion to quash is to enter the confidentiality order we

23 proposed.

24         And actually on the confidentiality order, the parties

25 are not all that far apart on what it should say.  There are

1    mainly two provisions which I can talk about, your Honor.  But

2    getting back to the -- your question, tax returns have

3    significant individual financial information.  Ms. Alise's tax

4    returns also have her children's information on there.  She has

5    two dependents.  There have -- there is information on there

6    that's not relevant to the case we'd like to redact.

7            But Ms. -- what we're concerned about is really the

8    plaintiff using these documents to publicize them around the

9    internet.  She certainly doesn't want her tax returns put all

10   over the court pleadings and everything.  And we're fine with

11   her having them.

12           What has happened in the past is any documents that

13   have gone to Ms. Tucker have somehow ended up in a pleading.

14   And we're concerned about these documents suddenly -- her tax

15   returns, Ms. Alise's tax returns, showing you on the internet

16   in various court pleadings.

17           We have no problem with her having them, the relevant

18   portion thereof, we just don't want them publicly filed.

19           THE COURT:  Okay.  What is the briefing

20   schedule -- what is the current status of the briefing of the

21   motion to quash or, alternatively, the confidentiality order?

22           MR. BERK.  The motion to quash, the response was filed

23   on the 10th, I believe.  Our reply is due on the 24th.  That's

24   concurrent with the briefing on Ms. Tucker's motion for

25   reconsideration of Judge Darrah's denial of a different motion.

1    THE COURT:  Of Judge Darrah's denial of what motion?

2    MR. BERK:  Ms. -- plaintiff filed a motion -- a motion

3 to compel McDonald Hopkins produce documents, motion for leave

4 to file a motion to compel McDonald Hopkins.  That was denied.

5    Subsequently she brought a motion to compel based

6 on -- based on a second subpoena she had served.  Judge Darrah

7 denied that.

8    Plaintiff filed a motion for reconsideration.  That's

9 being briefed on the same track as the motion to quash was, and

10 Judge Darrah set a hearing on that for June 19th.

11    So the 24th will have the quash reply, as well as the

12 reconsideration reply, to the extent that impacts your

13 decision, your Honor.

14    MS. TUCKER:  But, your Honor, I believe that that June

15 19th hearing has been changed by Judge Darrah to a status

16 hearing given the referral of discovery to you.

17    THE COURT:  Okay.

18    MS. TUCKER:  So that's --

19    MR. BERK:  I believe that's correct.

20    MS. TUCKER:  It is not a motion hearing date.

21    THE COURT:  All right.  Thank you.  And I am content

22 -- you can tell Judge Darrah, to deal with your motion to quash

23 or, in the alternative, for entry of a confidentiality order.

24 All right?

25    I'm not going to deal with any motion to reconsider

1    Judge Darrah's priors orders.

2          MR. BERK:  I don't think that was sent to you, your

3    Honor.  I believe that's correct.

4          THE COURT:  Okay.  Let me say with respect to.

5          MS. TUCKER:  No, the -- your Honor, the motion for

6    reconsideration was granted.  So it was -- he -- he denied us

7    leave to file a discovery motion.  Okay?

8          THE COURT:  Uh-huh.

9          MS. TUCKER:  The motion for him to reconsider allowing

10   us to file that discovery motion.  He has -- he has dealt with

11   the motion for reconsideration part.  So now it is just a

12   discovery motion because he's undone his previous ruling which

13   was just denying the leave.

14         But now he granted us leave to file the discovery

15   motion.

16         MR. BERK:  Yeah.

17         THE COURT:  And what particular discovery motion was

18   that?  I see Mr. Flynn changing positions with Mr. Berk, so it

19   must have something to do with McDonald Hopkins.

20         MS. TUCKER:  Yes, it does.  It is to compel the

21   McDonald Hopkins attorneys.  So the motion for reconsideration

22   has already been dealt with.

23         THE COURT:  Okay.

24         MS. TUCKER:  So it is just --

25         MR. FLYNN:  I don't believe that's correct, your

1  Honor.

2          MS. TUCKER:  It is a substantive discovery motion.

3          THE COURT:  Okay.  Well --

4          MS. TUCKER:  (Unintelligible).

5          THE COURT:  To the extent that there is a disagreement

6  about what Judge Darrah meant with -- in his ruling on the

7  motion for reconsideration, I'm going to leave that to Judge

8  Darrah.

9          To the extent that there is going to be a motion to

10 compel McDonald Hopkins --

11         MS. TUCKER:  Yes.

12         THE COURT:  -- my guess is it is coming to me.

13         MS. TUCKER:  Yes.  And that is the only motion that is

14 currently outstanding.  Because, as I said, Judge Darrah has

15 already ruled on the motion for reconsideration element of

16 that.

17         THE COURT:  Okay.

18         MR. FLYNN:  And, your Honor, I don't believe that's

19 accurate, your Honor.

20         MS. TUCKER:  Well, it is --

21         THE COURT:  Well, it either is or it is not, but

22 that's something that is going to be in front of Judge Darrah

23 it seems to me.

24         Let me tell you this.  I will deal with your motion

25 either to quash or to enter a confidentiality order.  We have a

1  confidentiality order, a model confidentiality order, in this

2  district.  Both of you are probably familiar with that order

3  judging from your nodding of your heads.

4         To me that is -- without hearing anymore, I would have

5  to be convinced on a clear and convincing standard, let's say,

6  that that order should be altered for this case.  That order

7  says that -- it defines confidential information in paragraph

8  2.  It says, information -- it includes information prohibited

9  from disclosure by a statute, information that reveals trade

10  secrets, research, technical, commercial or financial

11  information that a party has maintained as confidential.

12  Medical information, personal identity information, income tax

13  returns, W-2 forms, 1099s, personnel or employment records of a

14  person who is not a party to the case.  And to my mind I

15  haven't looked at your briefing on the confidentiality order

16  yet, but to my mind that could be sufficient.  Okay?

17         So you're talking about tax returns.  That's covered

18  in this order.  You're talking about personal identify

19  information, you're talking about Social Security Numbers,

20  you're talking about children's names, races, sexes, all this

21  stuff should be covered by this confidentiality order.

22         As far as I am concerned, however, financial

23  information that is not maintained as confidential,

24  uncomfortable information, sensitive information most of the

25  time doesn't come within it.  You all have chosen to litigate

1    publicly, in a public forum, in a public court issues that

2    are -- that are at issue between you.  And if the materials

3    fall within the context of this order, they are confidential.

4    If they don't fall within the context of this order, my best

5    guess they are not, unless I am convinced at a fairly high

6    level that a particular document or category of information

7    should be treated as confidential.

8           In terms of the West Suburban information, for

9    example, to the extent that an accountant privilege applies and

10   there is no exception, I have some familiarity with the

11   accountant's privilege in Illinois.  I don't -- I know that

12   there is some authority about whether that even applies in

13   federal court.  Okay?  And to the extent it does, I think it

14   is -- it may be limited.  I'm not weighing in on that now.  All

15   right?

16          But I am not inclined in this case to let any party

17   litigate in secret.  The Seventh Circuit has spoken clearly on

18   that.  Judge St. Eve has some very good opinions on that.

19   Other judges in this district have good opinions on it.  And I

20   think they -- those opinions generally hit the mark, which is

21   if you choose to litigate in public, other than materials that

22   really are -- the case law says should be confidential, they

23   are not.

24          All right.  So I'm going to look at this -- or maybe

25   I'm even going to set this particular motion for hearing so

1  that we can get this confidentiality order issue out of the

2  way.  I would love to get the issue out of the way so that West

3  Suburban can produce.  Okay?  But I'm not prepared to deal with

4  it now.

5       Let me though deal with these motions to compel

6  generally in these third party situations.  Okay?  I do not

7  see -- cutting through all this stiff, I mean I know Mr. Ind is

8  here, and I'm glad he's here.  Okay?  However, I don't see any

9  authority that third-party subpoenas under Rule 45 can be

10  enforced against the third party on a motion to compel on a

11  couple -- in a couple of situations.  Number one, these

12  subpoenas seem to me to have all been served by certified

13  mail.  Okay?  Unless you can show me that the third-party

14  deponent has actually agreed to accept these subpoenas by

15  certified mail, I think Rule 45 says they should be served by

16  somebody over the age of 18.

17       MS. TUCKER:  Your Honor, there is actually some case

18  law on that.  I have looked at it quite a while ago, so I'm not

19  necessarily current on it.  But it says that the actual -- the

20  postal delivery person is -- you can presume that they will be

21  over the age of 18.  And because that is hand delivery that --

22  I believe the case law shows that that is sufficient by

23  certified mail.

24       THE COURT:  Okay.  And does it -- and is there

25  authority that says -- and I don't know whether that's good

1  practice or not good practice or whether I'm going to accept

2  that practice.  Okay?

3       And then there is another issue about whether that's

4  sufficient to compel somebody to do something.

5       And the third is under 45(e), I think, to me the -- I

6  understand that the proper procedure if a third party is not

7  responding to a subpoena is there rule to show cause why that

8  third party should not be held in contempt.  Okay?

9       Now nobody cites any law in any of these motions to

10  compel.  With respect to the Nathanson subpoena, I'm not sure

11  whether Mr. Nathanson agreed to accept the subpoena or not or

12  where that stands.

13       MR. BERK:  I should explain that a little because I

14  was involved in that.

15       THE COURT:  No, I don't want to hear that.

16       MR. BERK:  Okay.

17       THE COURT:  Because -- but to me if you proper serve a

18  third party and there is no doubt that the third party received

19  the subpoena in a way that is proper under the Federal Rules of

20  Civil Procedure, and that person is not responding to the

21  subpoena, I think the proper procedure is a rule to show cause

22  why that person shouldn't be held in contempt.

23       I would have that person in.  We would have a

24  hearing.  Now if -- if a party, like Alise, is preventing a

25  third party, like West Suburban, from responding to a lawful

```
1    subpoena, in a rule to show cause situation, West Suburban can
2    come in and say, look, we're prepared to respond.  And I hear
3    Mr. Ind saying today we're prepared to respond provided that
4    there is a proper confidentiality order and provided any
5    legitimately confidential or privileged information is
6    protected.  Okay?
7          But if I get wind that one party or the other is
8    preventing a third party from responding to a lawfully served
9    subpoena, I'm going to have a hearing.  And if that person is
10   interfering with the judicial process, then they're -- that's
11   sanctionable activity, period.
12         It sounds to me though that this motion to compel West
13   Suburban -- Mr. Ind, has West Suburban actually responded in
14   writing to this subpoena?
15         MR. IND:  (unintelligible) with West Suburban, your
16   Honor, there was a response, a limited response.
17         THE COURT:  Well, I saw a limited production of
18   document.  But was there actually a written response to the
19   subpoena?
20         MR. IND:  The written -- I mean, the written response
21   was not consistent with your privilege log and the rules that
22   we're generally accustomed to.
23         THE COURT:  Uh-huh.
24         MR. IND:  But, yes, technically there was a written
25   response.
```

1    The documents -- it is (unintelligible.)

2    You know, the documents that West Suburban has to

3    respond (unintelligible) in the future are relatively limited.

4    And aside from the tax returns -- I wish we had some tax

5    returns.  But -- so there isn't really that much to respond to

6    in addition to what's already been produced.

7    THE COURT:  Uh-huh.

8    MR. IND:  I have spoken with Ms. Tucker's firm, a

9    representative of Ms. Tucker's firm about that.  So, you know,

10   it would not take long to do.  But as your Honor has repeatedly

11   stated, you know, the issue of the confidentiality order which

12   really West Suburban's position is we don't want to be in

13   a -- at the forefront of disclosing confidential information

14   when our position is that it should have been taken care of a

15   long time ago so that we can just produce pursuant to the order

16   that's entered.

17   THE COURT:  Okay.  Well, it sounds to me like the

18   only -- the only impediment right now to your client making a

19   more fulsome production in response to the subpoena is the

20   confidentiality order.

21   MR. IND:  That's correct.

22   THE COURT:  Ms. Tucker, you don't agree with that?

23   MS. TUCKER:  I was just suggesting that the only thing

24   that they could have that would be potentially confidential

25   covered by the model order would be Ms. Alise's tax returns,

1    and we have no issue whatsoever with them being deemed

2    confidential.  So perhaps we could just expedite this, and that

3    should not be an issue.

4            THE COURT:  Well, I bet you there could be some

5    personal identity information there too.

6            MS. TUCKER:  And we're fine with that too.  I already

7    know her Social Security number, I already know her kids's

8    names.  But if they want to redact that from -- I don't believe

9    that that information is disclosed on tax returns --

10            THE COURT:  Okay.  By Mr. Ind --

11            MS. TUCKER:  -- they can just redact it.

12            THE COURT:  But, Mr. Ind, what if I were to -- what if

13    I were to order that West Suburban produce -- respond to the

14    subpoena.  And if you -- and I think it is always helpful to

15    respond in writing, okay, on a point-by-point basis.

16            West Suburban respond to the subpoena, produce the

17    documents subject to our model confidentiality order, and

18    subject further to any modifications to that order that I end

19    up making after I hear the full argument.  So that -- so that

20    your production would be covered -- I mean, I -- in fact, I'll

21    tell you what I would do, okay?  I'm going to enter -- well,

22    no, because it has got --

23            MS. TUCKER:  Your Honor, the parties have proposed

24    minor changes to the model.  I have --

25            THE COURT:  Okay.

1    MS. TUCKER:  -- our proposed version here with me.

2    THE COURT:  Yeah, but I'm not going to treat with that

3  right now.

4    What I am going to say is -- I mean, I would like to

5  get this moved -- I'd like to move this off the docket, so what

6  I'd like to say is that --

7    MR. IND:  You know, what I suggest, because I know

8  that the hearing is potentially set or at least it was a

9  tentative hearing date set for motions to quash subpoenas --

10  and I apologize (unintelligible) related (unintelligible) --

11    THE COURT:  Uh-huh.

12    MR. IND:  But there is a motion to quash subpoenas or

13  a motion for a confidentiality order in place.  I know that the

14  distinction or the differences between the model

15  confidentiality order, as your Honor is looking at, and the

16  proposed changes are significant to the parties.  Whether that

17  rises to the clear and convincing level that you are discussing

18  is another issue.  But, you know, I would prefer, because there

19  would potentially be ambiguity if we were to produce it and say

20  (unintelligible) --

21    THE COURT:  Uh-huh.

22    MR. IND:  -- under the model confidentiality order,

23  which may expose it to reproduction to (unintelligible).

24    And then two weeks later, on June 19th, whatever that

25  hearing date is, this more stringent (unintelligible)

1    confidentiality order.

2             THE COURT:  Okay.

3             MR. IND:  My client's comfort level would be just to

4    -- I mean, we're happy to produce, as I have said, but until

5    after the whole confidentiality issue has been dealt with.

6             THE COURT:  Okay.  Look, I'm a little reticent to wade

7    into this not knowing what I am doing on the confidentiality

8    order front.  I don't really know what the issues are between

9    you.  So I'll accede to what Mr. Ind is saying, which is -- I

10   mean, what I understand you to be telling me is if a

11   confidentiality agreement -- confidentiality order that is

12   either acceptable to the parties or to the Court is entered,

13   West Suburban will produce documents.

14            What I would like you to do though as an interim step,

15   even before that confidentiality order is entered, is respond

16   in writing to this subpoena, okay, saying we are prepared to

17   produce documents in response to these categories or not.  If

18   you -- if you have a question about whether or not a particular

19   category is vague or ambiguous and you need additional

20   language, I'd like to initiate that correspondence with

21   Ms. Tucker so that we are prepared at some point when a

22   confidentiality order is entered to have that happen.

23            MR. IND:  Absolutely.

24            THE COURT:  And how long will it take you to do that?

25            MS. TUCKER:  Your Honor, we have actually already done

1    that.  And I believe that there is a limited subset of

2    documents that they have that have been collected.  So we have

3    already had those sorts of conversations.  As I understand it

4    the only hold up is his fear that Ms. Alise will claim that he

5    violated her confidentiality.

6            So we are good between ourselves as far as the

7    collection of documents and the scope of that production once

8    Ms. Alise's confidentiality --

9            THE COURT:  Okay.

10           MS. TUCKER:  -- (unintelligible).

11           THE COURT:  Okay.

12           MR. BERK:  Your Honor --

13           THE COURT:  Let me ask you this, do you know how long

14    it will take you, Mr. Ind, or your client after the

15    confidentiality order is entered to produce?

16           MR. IND:  It really would be a very limited amount of

17    time.  We're talking, you know, seven to 14 days probably.

18    Depending on schedules, of course, not of mine, but of my

19    client's.  But it would not be a long period of time.

20           THE COURT:  Okay.

21           MR. BERK:  And, your Honor, if I may just add one

22    thing to the discussion.  One other issue we raised is our

23    request to redact certain irrelevant information, charitable --

24    you know, I can think of things off the top of my head that are

25    on tax returns that are not relevant to this case, charitable

```
 1    donations, dependent care.  Things like that that may not be
 2    relevant, we'd like redacted off.  We don't think there is any
 3    reason.  We have raised that, and we would brief that in the
 4    motion.  I don't know how your Honor would like to handle that,
 5    but I just wanted to make the record clear as to we have made
 6    that objection as well that certain information in the tax
 7    returns is not relevant and should not be disclosed in any
 8    event.
 9            THE COURT:  Okay.  You have no standing yet to raise
10    that issue because you don't have a motion for protective order
11    on file.  All right?  And, you know, my -- I want to be real
12    clear here.  All right?  Third-party subpoenas are between a
13    party here and the third party.  That's why I have been
14    addressing Mr. Ind and Ms. Tucker.  Okay?
15            To the extent that anybody is going to interfere with
16    a party's response to a third-party subpoena, they are going to
17    have to -- they have to be real careful.  Okay?  So if you have
18    motion for a protective order to file on behalf of Ms. Alise,
19    who is a party to this litigation, you ought to file it.
20            MR. BERK:  Okay.
21            THE COURT:  Okay?  I think you ought to think hard
22    about filing a motion that's based on relevance and not
23    privilege and not some type of statutory protection.  All
24    right?  Because relevance is pretty broad here.  And to me I
25    don't know right now the relevance of charitable contributions
```

1  or not.  But if they part of a tax return and the tax returns

2  are going to be produced under a confidentiality order and the

3  material can't be used other than in this case, then I would

4  think hard about whether or not you have good grounds to say

5  that this information is neither relevant nor will likely -- be

6  likely to lead to the discovery of admissible evidence.  I'm

7  not ruling on it right now, I'm just telling (unintelligible)

8  want to file it.

9          And I'm also -- this is also subject to what I said at

10  the beginning of this process, which I do not want to deal with

11  ridiculous motions, unnecessary motions.  And to the extent

12  that they are filed and to the extent that somebody has to

13  respond to them, I'm going to think hard -- I haven't done it

14  in this case I don't think up until now -- but I'm going to

15  think hard about whether or not the federal rules provide a

16  burden shifting mechanism here to stop unnecessary motion

17  practice.  Okay?

18          So when things are produced under a confidentiality

19  order, courts are a little less willing to look at relevance

20  objections.  Okay?

21          MR. BERK:  Understood, your Honor.  I just raised it

22  because it was just a part of the complete picture.

23          THE COURT:  Fine.

24          MR. BERK:  And we certainly will take your comments

25  into account whether we would file the motion.  Any future

1    motion we'll take those comments into account as well.

2         THE COURT:  Okay.  I -- to my way of thinking, with

3    Mr. Ind here representing West Suburban, and with respect to

4    the only issue now as I understand it being the entry of a an

5    appropriate confidentiality order, okay, I'm going to deny

6    without prejudice the motion to compel West Suburban.  All

7    right?  It seems to me that -- and what I would -- will say is,

8    Mr. Ind, to protect your client, but also to encourage your

9    client, I'm going to say that West -- in my order it will say

10   West Suburban will produce documents responsive to plaintiff's

11   subpoena within 14 days of entry of an appropriate

12   confidentiality order.

13        MR. IND:  Absolutely, your Honor.

14        THE COURT:  Okay?

15        MS. TUCKER:  If your Honor -- I'm a little bit

16   confused.  Because the motion is our motion to compel, and you

17   have just said that you are denying the motion to compel.

18        THE COURT:  I am because I don't think it is

19   necessary.  I mean, you have got somebody right here saying,

20   I'm going to produce.  I don't have any problem with producing

21   subject to an appropriate confidentiality order.  What am I

22   going to compel him to do?

23        I'm going to deny the motion to compel -- well, I'll

24   deny.  Okay.

25        MS. TUCKER:  But we need -- we need to compel them --

1          MR. BERK:  Perhaps, your Honor --

2          MS. TUCKER:  -- because they are not willing to

3     produce given --

4          THE COURT:  Absent compulsion?

5          MS. TUCKER:  -- Alise's objections.

6          MR. BERK.  Perhaps, your Honor --

7          MS. TUCKER:  Absent compulsion.

8          MR. BERK:  Perhaps you can just continue the motion --

9          MS. TUCKER:  Oh, and, your Honor --

10         THE COURT:  No, no, no, no, I -- no, I don't want to

11    -- okay

12         MS. TUCKER:  And, your Honor --

13         THE COURT:  Okay.

14         MS. TUCKER:  Your Honor, I'm sorry, can I please speak

15    to this issue?  There is -- I'm a CPA, and so there is a

16    federal tax statute.  Perhaps Mr. Ind is not familiar with it.

17    But these are the sorts of protections that he is looking for.

18    It is under the Internal Revenue Code.  And what it says is

19    that an accountant cannot produce, absent an order of this

20    Court or consent of their client.

21         THE COURT:  Right.

22         MS. TUCKER:  Now it doesn't -- it is not a privilege.

23    It just says that his client would be guilty of a misdemeanor

24    if he didn't get an order from this Court.  So he needs the

25    opposite order --

1        THE COURT:  Right.

2        MS. TUCKER:  -- from this Court compelling him to

3   produce or he needs Alise's consent, which he doesn't have.

4        THE COURT:  Right.  No, I -- thank you.  I know the

5   statute.  It talks about producing filed returns or something

6   like that to somebody other than the party.

7        MS. TUCKER:  Yes, it is tax --

8        THE COURT:  Right.

9        MS. TUCKER:  -- information, but that's what we're

10  talking about is tax information.

11        THE COURT:  Okay.  It is -- so form is important

12  here.  So let me retract what I said.

13        MS. TUCKER:  Okay.

14        THE COURT:  I'm going to grant the motion to compel.

15  I'm going to orders that West Suburban produce documents

16  responsive to the subpoena within 14 days of entry of an

17  appropriate protective order.

18        I'm telling you right now though I'm not 100 percent

19  sure that a motion to compel is the right way to go here, but

20  I'm going to grant it because I think just procedurally I'd

21  like to move that out of the way and get us to the point of

22  getting the documents.  Okay?

23        So my order will say, we had a hearing on the motion,

24  the motion to compel is granted.  And West Suburban will

25  produce responsive documents within 14 days of entry of an

 1    appropriate protective order.

 2          Okay.  If you -- I have two cases on my 10:00 o'clock

 3    status call.  I don't think that they are going to be long.

 4    Can you hang around -- Mr. Ind, you don't need to hang around.

 5          MR. BERK:  I may have an issue depending how long

 6    those take.  I have to get north for a funeral at noon.

 7          THE COURT:  Okay.  I -- so --

 8          MR. BERK:  If I can be out of here about 10:30, 10:45,

 9    I can be assured of making it.  I just don't want to be late,

10    your Honor.

11          THE COURT:  Okay.  Okay.  Let me just -- I just want

12    to see what we can accomplish, and then we'll set things in the

13    future.  But I just can want to see if there is anything else

14    we can accomplish.

15          I don't think these two matters should take long.  If

16    they do, you're excused, and we'll reset this at some point.

17          MR. BERK:  Thank you, your Honor.

18          THE COURT:  I'm doing this though because as you know

19    I'm going to be out of town, so I want to see what I can get

20    accomplished before I leave.

21          MR. BERK:  Agreed, your Honor.

22          THE COURT:  If we have to move this to Thursday

23    morning, we can move it to Thursday or some other day.  I just

24    have a busy day on Thursday.

25          Mr. Ind, I want to thank you for coming in.  And if

 1   you need to come back, you're welcome to come back, but

 2   hopefully we can deal with this.

 3         MR. IND:  Thank you, your Honor.  Appreciate it.

 4   Thank you.

 5         THE COURT:  Okay.  Let's pass this for a second.

 6      (Whereupon the Court turned his attention to other matters

 7   on his call.)

 8         THE CLERK:  11 C 1089, The Tucker Firm, LLC versus

 9   Alise.

10         THE COURT:  Why don't you state your appearances

11   again.

12         MS. TUCKER:  Debra Tucker on behalf of the plaintiffs.

13         MR. BERK:  Peter Berk on behalf of Kimberly Alise.

14         MR. FLYNN:  George Flynn on behalf of McDonald

15   Hopkins, LLC and its individual attorney respondents.

16         THE COURT:  Okay.  What have you noticed for

17   the -- for Thursday?

18         MS. TUCKER:  Your Honor, that is our motion to compel

19   Alise's responses to our first set of interrogatories, our

20   document requests, a separate motion, motion to compel her to

21   produce documents in response to our document requests, and the

22   motion to compel the Guterman parties, who are Dr. Guterman

23   himself, ECDS, and Malo.

24         THE COURT:  Okay.

25         MR. BERK:  Your Honor, may I briefly comment on two of

1  those motions?

2  THE COURT:  No.

3  MR. BERK:  Okay.  They may in fact (unintelligible).

4  THE COURT:  Okay.  Well, then briefly comment.

5  MR. BERK:  The motion to compel Ms. Alise to respond

6  to interrogatories and document requests we believe is

7  premature.  The interrogatories -- I had a 37.2 conference with

8  Ms. Pavely, one of Ms. Tucker's associates, I believe, last

9  week, and offered to get back to her by tomorrow with certain

10  additional information.  Without waiting for that they filed

11  their motion.  I don't believe that's in the spirit or in

12  compliance with 37.2.

13  The motion on the document request, I have offered the

14  date of May 16th when they noticed the motion for the 37.2

15  conference.  We haven't had that conference yet, and yet they

16  are bringing a motion.  I think that's premature.

17  MS. TUCKER:  Your Honor, in the motions itself we

18  specifically address the compliance with 37.2.  So I would ask

19  that you read that before you decide whether they have in fact

20  complied or not complied with 37.2.  I believe that we have

21  fully complied.

22  This is one of Berk's persistent tactics to prevent us

23  from filing motions to compel.  That is why we are here at

24  nearly the end of the close of discovery without any discovery

25  because Mr. Berk objects to us coming to the Court with tactics

1  like this, of future promises of performance that never in fact

2  materialize.

3          MR. BERK:  Your Honor, that's -- that's --

4          THE COURT:  No, no, no.  Please stop.

5          The only motion that I read was the motion to compel

6  Alise to respond to interrogatories.  I did not read the motion

7  to compel document requests responses, and I have not looked at

8  the Guterman motions, the motion to compel the Guterman

9  parties.

10          However I did look at Alise's responses to the revised

11  interrogatories served by Tucker.  And my review of those

12  responses to interrogatories by Alise tells me that Alise's

13  responses to those interrogatories are sorely lacking in

14  detail.  I think the objections by and large are not well

15  founded.

16          I think that, Mr. Berk, you need, if you are going to

17  have a meet and confer, to go back and look at the rules of

18  discovery, including the rule, I think, that requires your

19  client actually to sign answers to interrogatories.

20          Your Answer to Interrogatory Number 1, for example,

21  asks for an identification of all people with knowledge, and

22  you reference your 26(a)(1) disclosures, which, by definition,

23  do not identify everybody with knowledge, they identify people

24  that you are going to -- whose testimony you would say supports

25  your claims and defenses.

1      MR. BERK:  And that's one of the issues we discussed

2  with Ms. Pavely, and I'll -- and one of the concerns we had,

3  which I raised with Ms. Pavely is, we believe that some of the

4  discovery that the plaintiff has undertaken goes well beyond

5  the scope of reasonableness of this case.  And I know there is

6  a dispute about that.

7      My concern that I raised with Ms. Pavely was, they

8  would use that answer as saying, see, all these people are

9  relevant.  And that was my concern.  Ms. Pavely suggested that

10  we do our answer indicating that, you know, these are knowledge

11  and without waiving the (unintelligible) disclaimer language in

12  there, and I said, that's definitely a consideration.  I would

13  consider doing that.  I will get back to you by the 15th, which

14  we're going to do.

15      THE COURT:  It is --

16      MR. BERK:  And that's what I intend to do on the 15th.

17      THE COURT:  That is a silly discussion as far as I'm

18  concerned.  And I realize I'm saying this on the record and

19  somebody could write this but -- and I use that word advisedly,

20  okay?  Of course the plaintiff is going to say that if you

21  identify somebody with knowledge, it is relevant, okay?  That's

22  the plaintiff's position.  The defendant may disagree.  But it

23  is an appropriate interrogatory to ask people with knowledge.

24  I think it is an inappropriate response to say, see my 26(a)

25  disclosures, and investigation continues.  I just don't think

1  that works.  Okay?

2       You -- this is an example of what I think is the

3  unnecessary fighting in this case.  Do you have a trial date in

4  this case yet?

5       MR. BERK:  We do not, your Honor.

6       THE COURT:  The second interrogatory -- I mean, at

7  issue in this case in the counterclaim is whether Tucker's fees

8  for the underlying divorce and business dispute were

9  appropriate.  Right?

10       Right, Mr. Berk?

11       MR. BERK:  Yes, your Honor.

12       THE COURT:  Okay.  And Alise says that Tucker billed

13  too much, right?

14       MR. BERK:  Yes, your Honor.

15       THE COURT:  And Interrogatory Number 2 asks you to

16  specify what's too much.  I think it is a legitimate question.

17  All right?  It may require a huge -- a lot of response, a long

18  response.  That's because your counterclaim says Ms. Tucker's

19  bill is outlandish, outlandishly large.  She shouldn't have to

20  wait till trial to hear what you have to say about it.  And all

21  you say is discovery is ongoing, it is overly burdensome, it is

22  premature.

23       It is not premature.  You filed a counterclaim.  All

24  right?  And so I look at a lot of these responses here, list

25  all distributions that Alise and/or Guterman received at any

1    time as an alleged owner of Malo or ECDS.  Now I think one of

2    the points that Tucker is making is that Alise got some

3    financial benefit from these underlying settlements and

4    whatever.  I'm not weighing into it necessarily.  But

5    you're -- you don't answer at all because you say distribution

6    is undefined.

7         MR. BERK:  And we discussed that in the conference

8    calls that our answer will be supplemented.  That's the point

9    I'm making, your Honor.  The -- the view from Ms. Pavely was

10   that a distribution is much broader than what we would consider

11   distribution.  We wanted to understand that.  She explained

12   that what -- we disagree with what her definition is, but we're

13   certainly going to look at supplementing that answer based on

14   what we discussed.

15        My problem is, your Honor, that they see a 37.2

16   conference as a mere stopover from filing a motion to compel.

17   I have been on the phone with Ms. Pavely and Mr. Saikely, who

18   was in the case before, I don't know if he is still in the case

19   or not, where I have asked for -- try to make reasonable

20   compromises, try to deal with these things, and the response I

21   basically get is, well, I can't agree to that, and I have no

22   authority to agree to that, and basically give me everything

23   I'm asking for or that's it.  And there is just no effort to

24   have a good faith compromise.  And what I think shows the lack

25   of restraint is that this filing a motion on documents prior to

1    even having a conference.  And I think that's problematic, your

2    Honor.

3         THE COURT:  I'm not talking about documents, I'm

4    talking about interrogatories.

5         Is Alise either -- does Alise own equity, either

6    limited partnership interest or stock in either Malo or ECDS?

7    Or did she at some point relevant to these proceedings?

8         MR. BERK:  At some point relevant she did.  There can

9    be a dispute as to whether her current interest actually

10   constitutes equity or true stock.

11        THE COURT:  Okay.  But to me then this objection

12   about, I don't know what a distribution means, may very well

13   not be well founded because, because if somebody owns an equity

14   interest and there is money that comes out of the entity to the

15   person who owns the equity interest as either a dividend or

16   some other type of distribution on that equity interest, I

17   think you can answer the interrogatory.  You can object to it.

18   But don't you think that's what they are asking about?

19        MR. BERK:  Your Honor (unintelligible) pull that up

20   because here --

21        MS. TUCKER:  Your Honor --

22        THE COURT:  It is Number 4.

23        MS. TUCKER:  Your Honor, to be very clear, there is

24   a --

25        MR. BERK:  Can I --

1    MS. TUCKER:  There is an alleged parent company and an

2   alleged subsidiary.  Alise in her own pleading claimed that

3   she's only an owner of the LLC, Malo the Dog, LLC.  Under the

4   Limited Liability Company Act, the word distribution, interim

5   and final distribution, is used.  So the definition of

6   distribution that we're talking about here is for the word, the

7   legal word distribution.  It is a legal word, and it is defined

8   under the Limited Liability Company Act.  There should be no

9   confusion over what that word means.

10    THE COURT:  Okay.  I'm not going to --

11    MR. BERK:  I have to correct something in the record,

12   and I apologize for interrupting your Honor.

13    Ms. Pavely's definition that she discussed with me on

14   the phone is completely different than that.  And in answering

15   under the -- what we understood to be a distribution, we

16   actually answered.  Subject to and without waiving those

17   (unintelligible) none.  Ms. Pavely asserted to me that a

18   distribution means any payment, whether it is salary, whether

19   it is a health benefit, whether it is payment of insurance,

20   whether it is anything is a distribution.  I don't think that's

21   right, but we answered it based on the understanding of

22   distribution, at least our understanding of it, what it is

23   defined as as none.

24    We did answer that interrogatory.  They disagree.

25   They believe that any payment to her, whether it is salary,

1  whether it is whatever, it is a, quote unquote, distribution.

2        MS. TUCKER:  Your Honor, to be clear, that information

3  that Mr. Berk is speaking about is requested in other

4  interrogatories.  This interrogatory is very specific as it

5  says, as an alleged owner of Malo or ECDS this -- this

6  interrogatory is perfectly clear.  There is nothing vague and

7  ambiguous about that.

8        THE COURT:  Okay.  But he says subject to all of his

9  objections, and I'm not sure exactly what that means, the

10  answer is none.

11        We have to stop because Mr. Berk has a personal

12  commitment.  And so I need to have you come back.  My purpose

13  in at least delving into the interrogatories was to, A, give

14  you a preview of some of my thoughts; and, B, to highlight the

15  fact that if these kinds of disputes are going to continue,

16  there is going to be some burden shifting.  There is going to

17  be some cost shifting.  Okay?

18        I mean, I understand what you are saying about

19  Interrogatory Number 4.  But when I look at these answers to

20  interrogatories, it is -- some of them in my mind are

21  obfuscatory.  And some of the information that is requested is

22  relevant or likely to lead to the discovery of admissible

23  evidence.  It should be in the defendant's, counterplaintiff's

24  possession.  You're well into discovery.  And I think that

25  plaintiff has a point here with respect to some of the

1    information she is seeking and the limited summary responses

2    that the defendant/counterplaintiff is providing.  I

3    don't -- I -- there may be -- there may be issues that are

4    legitimate here, but they are not as legitimate as I see your

5    answers to interrogatories being, and I think that you're going

6    to need to deal with that.

7         MR. BERK:  And, your Honor, we did that -- we'll take

8    that comment and go back, as we intended to do, as we discussed

9    with Ms. Pavely at the 37.2.

10        THE COURT:  All right.

11        MR. BERK:  I have no problem doing that.

12        THE COURT:  Look, you guys are scheduled on my motion

13   call on Thursday, and I have like eight motions on that 9:15

14   call.  It is going to be impossible to deal with you

15   substantively there.  Can you come in instead at 11:00 where I

16   could actually have maybe an hour with you?

17        MS. TUCKER:  Yes, your Honor.

18        MR. BERK:  Yes, your Honor.

19        THE COURT:  And my goal at that is to figure out a

20   schedule for resolving some things that actually need to be

21   resolved, set them on the calendar for hearing, discuss -- I'll

22   have a chance to maybe look a little bit more at some of this,

23   for example, Tucker's motions to compel on -- your motions to

24   compel Tucker to respond to certain things, and see whether or

25   not I think they are subject to the same deficiencies.  But I

```
 1    would like to set a definitive schedule as to when we're going

 2    to get things resolved and how we're going to get things

 3    resolved at that time.  Okay?

 4              MR. BERK:  Yes.

 5              THE COURT:  So I could spend about an hour at 11:00 or

 6    a little bit more.  Okay?

 7              MR. BERK:  Yes, your Honor, that's fine.

 8              THE COURT:  Okay.

 9              MS. TUCKER:  Okay.

10              THE COURT:  And you're going to be here too, Mr.

11              MR. FLYNN:  Flynn.

12              THE COURT:  -- Flynn?

13              MR. FLYNN:  Your Honor, I probably won't be here that

14    morning.  My partner Richard Kaplan will likely be here.

15              THE COURT:  Okay.

16              MR. FLYNN:  I do -- at the risk of delaying Mr. Berk,

17    if I could have a minute and a half, I do have an issue I need

18    to the bring to the Court's attention reluctantly.  I do not

19    have a motion on this issue, but this is such a basic and

20    fundamental principle I don't think it is necessary, and I

21    think the Court will agree.

22              I have been retained to represent McDonald Hopkins,

23    the firm, as well as its individual attorneys for purposes of

24    responding to discovery and defending their depositions in this

25    case.  I have also been retained to defend the firm when
```

1    Mr. Berk or Mr. Steve Harris in the state court action which

2    Ms. Tucker filed on May 1st.  One of the counts is contribution

3    arising out of this very malpractice counterclaim from this

4    case.

5            In connection with my representation I have on four

6    occasions in writing and one occasion yesterday during a 37.2

7    conference advised The Tucker Firm to refrain from contacting

8    my clients directly, with the exception of Mr. Berk,

9    Mr. Kessler, and Mr. Jacobi because they are handling the

10   litigation on behalf of Ms. Alise.

11           Ms. Tucker's colleagues have refused to acknowledge my

12   request pursuant to Rule 4.2.  And I have suggested that I

13   would take necessary actions, which I reluctantly will take.

14           But I am requesting that the Court instruct Ms. Tucker

15   and her firm to refrain from contacting my clients whether by

16   letter, email, phone call or even a copy of the letter, with

17   the exception of Mr. Berk, Kessler, and Mr. Jacobi.

18           THE COURT:  Okay.  I don't know how you want me to

19   deal with this in a minute and a half.  I want to respect

20   Mr. Berk's need to get to a funeral.

21           MR. FLYNN:  I understand.

22           THE COURT:  If your partner is going to be here on

23   Thursday, he can raise this.  If you have a motion to file, but

24   you're not a party really -- although you are -- I don't know.

25           MR. BERK:  He's a third-party respondent.

1        THE COURT:  You know what, and I don't know what

2   Ms. Tucker's response to this is.  I don't -- I'm not going to

3   weigh in right now, I'm just not.

4        So I'm going to let Mr. Berk go to his appointment.

5   I'm sorry that --

6        MR. BERK:  Your Honor --

7        THE COURT: -- you waited to the end to raise this.

8   But if you can't work this out, I'll deal with it.

9        MR. FLYNN:  Understood.

10       MR. BERK:  I might suggest if I am not necessary for

11  any more with this issue, Mr. Flynn can handle it and I can

12  still leave --

13       THE COURT:  Oh, okay.

14       MR. FLYNN:  Absolutely.

15       THE COURT:  Fine.

16       MR. BERK:  That's perfectly fine with me, your Honor.

17       THE COURT:  Fine.  Go.

18       MR. BERK.  Thank you.

19       MR. FLYNN:  And, your Honor --

20       MR. BERK:  Appreciate it, your Honor.

21       MR. FLYNN:  -- I make a living representing

22  attorneys.  And the last thing I want to do is contact the ARDC

23  or, you know, in federal court the Chief Judge to report

24  misconduct.

25       THE COURT:  So what you are saying simply is that you

1    are counsel for a represented party or parties.  You have

2    requested that the opposing party communicate with those

3    represented parties only through you or a member of your law

4    firm because you are counsel for these parties.

5                MR. FLYNN:  Yes, with the exception of --

6                THE COURT:  The people who are litigating this case

7    where it would be unnatural for them to communicate with you on

8    that.

9                MR. FLYNN:  Absolutely.

10               THE COURT:  Okay.

11               MS. TUCKER:  Your Honor, what he's trying to do is to

12   prevent us from speaking to our opposing counsel.  For

13   example -- yes, he is.

14               For example, Ms. Jenny McGovern has been -- she is an

15   attorney with McDonald Hopkins.  She is -- has participated

16   voluntarily, not at our request, in 37.2 conferences

17   representing Ms. Alise.  This is one of the attorneys that

18   Mr. Flynn claims that I am violating the Rules of Professional

19   Conduct by copying letters and apparently by talking to her in

20   a 37.2 conference that she voluntarily participated in.

21               He might represent them with respect to discovery

22   directed to them, and I am communicating on those matters with

23   Mr. Flynn, and not these people.  But they are opposing counsel

24   in this case.  I have to communicate with my opposing counsel

25   in this case and not some third party who represents them in

1   another case.  I have only directed my communications to

2   lawyers at McDonald Hopkins who are representing actively

3   Ms. Alise.

4           Might I suggest that any people that are doing that

5   simply file appearances?  For example, Ms. Jenny McGovern, she

6   is an attorney at McDonald Hopkins.  She is working for

7   Ms. Alise on this case.  So for clarity it would be helpful if

8   they would just put her appearance on file, and then there is

9   no dispute that I am entitled to communicate with her.  She has

10  participated on 37.2 conferences.  It is not a violation of the

11  Professional Rules of Conduct for me to -- for the lawyers in

12  my firm to talk to a lawyer that they put on the phone in a

13  37.2 conference with respect to matters that don't involve the

14  state case that (unintelligible) a 37.2 conference on discovery

15  that is unrelated to discovery directed to McDonald Hopkins.

16          It is not my problem that they have entered --

17          THE COURT:  Time out.  Time out.

18          MS. TUCKER:  -- conflicting representation.

19          THE COURT:  Time out.  I get it.

20          What's your response?

21          MR. FLYNN:  Judge, it is a violation of the rules

22  after I have advised them not to contact my clients.  Now Jenny

23  McGovern is not going to be involved in any more of those 37.2

24  conferences.

25          THE COURT:  But was she?

1       MR. FLYNN:  Was she in the past?

2       THE COURT:  Yeah.

3       MR. FLYNN:  I believe so.

4       THE COURT:  Okay.  Look, I think what you are

5   saying -- I mean, this, again, I think rises to the level of --

6   or falls to the level of silliness.  From what I understand

7   from Mr. Flynn, what you are saying is McDonald Hopkins is

8   representing the defendant and counterplaintiff in this case.

9   Right?

10      MR. FLYNN:  Yes.

11      THE COURT:  And there are attorneys at McDonald

12  Hopkins that are participating in that representation, right?

13      MR. FLYNN:  There are three that have filed

14  appearances in this case.

15      THE COURT:  Okay.  But I'm -- but that's a weasel

16  word, okay?  That's a weasel word.  It happens all of the time

17  that somebody may not have technically an appearance on file,

18  but might -- an associate, for example, or a partner might

19  write a letter that says, we object to these discovery

20  requests.  Might be on a phone call.  And I -- what I heard you

21  saying to me at the beginning was that you understand that it

22  is not a violation of the professional responsibility rules for

23  Ms. Tucker to communicate with lawyers from McDonald Hopkins

24  who are actually involved in this litigation representing a

25  client.

1     What you want to avoid is that to the extent that the

2     people you represent are either responding to subpoenas or are

3     parties in some other case and you are representing them with

4     respect to those matters, that all communications with respect

5     to those matters which do not touch the lawyers or staff's

6     representation of Alise in this case, those communications

7     should go through you, right?

8          MR. FLYNN:  The communications regarding this case --

9          THE COURT:  Uh-huh.

10         MR. FLYNN:  -- can go through the three attorneys.  I

11    think that's sufficient.  There are three --

12         THE COURT:  But, wait.  Whoa, whoa, wait.  Was

13    McGovern on the phone with Tucker in a 37.2 conference?  Yes or

14    no.

15         MR. FLYNN:  At some point in the past, yes.

16         THE COURT:  Okay.  And are you saying that Tucker's

17    communication with McGovern because she does not have an

18    appearance on file in this case violates some rule?

19         MR. FLYNN:  No --

20         THE COURT:  Okay.

21         MR. FLYNN:  -- not at all.

22         MS. TUCKER:  Your Honor, he has written me a letter

23    saying --

24         MR. FLYNN:  That is not --

25         MS. TUCKER:  -- precisely that.  That my

1  communications with Ms. Jenny McGovern violate the Professional

2  Rules of Conduct, and he's going to have to report me to the

3  ARDC.

4       MR. FLYNN:  Going -- going forward.  I did not say I

5  was going to report her to the ARDC

6       MS. TUCKER:  Oh, I'm sorry.

7       THE COURT:  Well, that would be silly.

8       MS. TUCKER:  He said to the applicable authorities.

9       THE COURT:  Okay.  You know what --

10      MR. FLYNN:  Judge --

11      THE COURT:  Her --

12      MR. FLYNN:  Going forward --

13      THE COURT:  Time out.  Time out.

14      MR. FLYNN:  I'm sorry.

15      THE COURT:  Time out.

16      Ms. Tucker's -- I'm not resolving any motion here.

17  Okay?  I'm just sitting as a mediator of this silly dispute.

18  Okay?

19      A bright -- it sounds like everybody needs a bright

20  line here.  I think Ms. Tucker's solution to this is not a bad

21  solution, which is that if there are attorneys at McDonald

22  Hopkins who are involved in representing Alise in this case,

23  and therefore you do not object to Ms. Tucker talking to those

24  people directly as in her role as counsel for Tucker in this

25  case, I suggest they get an appearance on file.

1      MS. TUCKER:  But, your Honor --

2      THE COURT:  Hold on.  Hold on.

3      MS. TUCKER:  -- what he's going to do is not file

4  those appearances.

5      THE COURT:  What?

6      MS. TUCKER:  Like Jenny McGovern, he just won't file

7  that appearance, and she will continue to work on the case

8  and --

9      MR. FLYNN:  Ms. Tucker has filed a state court action

10  to create these conflicts.

11      THE COURT:  You know, I -- you know what, I have been

12  around this block before.  I think it makes a lot of sense for

13  McDonald Hopkins to have hired separate counsel either to

14  respond to subpoenas in this case or for any other issues that

15  have to exist.

16      To me -- I'm not getting it, Mr. Flynn.  If -- I'm not

17  hearing Ms. Tucker say that she is wanting to communicate with

18  attorneys or staff at McDonald Hopkins who aren't -- who are

19  not engaged in conduct or activity in representing Alise in

20  this case.  I'm just not hearing her say that.  Okay?

21      And if we're talking about this McGovern person and

22  she actually did participate in communications relating to the

23  merits of this case or discovery of this case, and what you are

24  now saying is she's not going to be doing so in the future and

25  so therefore Ms. Tucker should not have any reason to speak to

1   her about this case in the future, my guess is she doesn't have

2   any problem with that.

3           MR. FLYNN:  And Ms. Tucker has subpoenaed

4   Ms. McGovern.  And I am representing Ms. McGovern for that

5   purpose, so I don't want her to talk to her about that.

6           MS. TUCKER:  Your Honor, we have not --

7           THE COURT:  What about whether -- how are you going

8   to -- and what is the subject matter of the subpoena?

9           MR. FLYNN:  Essentially everything involving the

10  underlying case.

11          THE COURT:  In the underlying case, meaning the

12  divorce and business dispute or this litigation, Number 11 C

13  1089?

14          MR. FLYNN:  Well, it is my understanding it is the

15  divorce and business litigation which is the matter of the

16  legal malpractice counterclaim.  So it is all intertwined.

17          They filed a contribution action in state court which

18  is baffling to me because --

19          THE COURT:  How do you propose -- how do

20  you -- Mr. Flynn, how do you propose if -- I understand Harris,

21  Kessler, and Berk you're taking out of that.  Right?  She can

22  talk to these people.

23          MR. FLYNN:  No, Berk, Jacobi and Kessler.

24          MS. TUCKER:  And precisely the point, he says I can't

25  even talk to Mr. Harris.  Mr. Harris has been here before your

1    Honor.  Mr. Harris is (unintelligible) --

2            MR. FLYNN:  He's not anymore.

3            MS. TUCKER:  -- settlement --

4            MR. FLYNN:  I'm telling him to stay out of this.  He's

5    my client.  He's entitled to representation.  And I have got to

6    protect him.

7            I also want to protect him from the harassing letters

8    that come at 9:00, 10:00 o'clock at night every night.  I'll

9    get -- Mr. Makee, who is the in-house counsel in Cleveland,

10   does not need to be communicated with by Ms. Tucker.  That is

11   my job.

12           MS. TUCKER:  Your Honor --

13           THE COURT:  I have -- I have had Mr. Harris here on a

14   number of occasions representing Alise and Mr. Guterman.  He

15   participated in settlement discussions directly with

16   Ms. Tucker, directly with me, directly with Ms. Tucker's

17   counsel.  And, you know, I'm loathe to wade in -- I mean, I'm

18   having trouble understanding what the issue is here.  I don't

19   know anything about the state court litigation.  This seems

20   very confusing to me.

21           MR. FLYNN:  It is, your Honor.  But Mr. Harris has

22   tendered -- as -- (unintelligible) insurance carrier.  They

23   have hired me to represent him and protect him.

24           THE COURT:  Uh-huh.

25           MR. FLYNN:  And so --

 1          THE COURT:  So if I have a settlement conference in

 2   this case, is Harris going to show up?

 3          MR. FLYNN:  Probably not.

 4          MS. TUCKER:  And, your Honor, Mr. --

 5          MR. FLYNN:  And if he does and if I give consent for

 6   Ms. Tucker to contact -- or communicate with him at that point

 7   in time, I think the rules allow that.  That's my prerogative

 8   as his lawyer.

 9          MS. TUCKER:  Your Honor --

10          THE COURT:  So you're going to be the arbiter of when

11   Ms. Tucker can talk to your client and when not?

12          MR. FLYNN:  I think that's what Rule 4.2 allows, yes.

13          THE COURT:  Uh-huh.

14          MS. TUCKER:  Your Honor, they are opposing counsel.

15   Mr. Harris --

16          MR. FLYNN:  But she has sued them --

17          MS. TUCKER:  Mr. Harris is calling Mr. Saikely about

18   settlement.  So is Mr. Saikely violating the professional rules

19   too?  I mean, Mr. Harris has been here representing Ms. Alise.

20   He is our opposing counsel.  We have only communicated with

21   those McDonald Hopkins lawyers who have actively participated

22   in Ms. Alise's representation in the underlying -- in this

23   case.  They are our opposing counsel, every single one of them

24   that we have had communications.

25          And, by the way, we are not calling them up by phone.

1    What he's talking about is copying them on letters because the

2    only communications that ever happen in this case are either an

3    official 37.2 conferences or are by letter.  And we are not

4    randomly calling his clients, we are calling -- we are copying

5    people on letters that are opposing counsel and we have good

6    information that they are in fact representing Ms. Alise with

7    respect to this loss of (unintelligible) are opposing counsel.

8    We have an obligation, not just a right, we have an obligation

9    to speak to our opposing counsel in this case.

10            MR. FLYNN:  Your Honor, there is a reason why this is

11   such an important point to me.  And I have personally listened

12   to a voicemail message that Mr. Berk -- unfortunately he had to

13   leave but he has on his phone and I guarantee that he will play

14   for you on Thursday -- is a voicemail message from Ms. Tucker

15   to Dr. Seth Guterman where she acknowledges his representation

16   by counsel and yet communicates with him substantively.

17            MS. TUCKER:  Your Honor, I have a letter from Mr. Berk

18   saying that they don't represent Dr. Guterman.  I would be

19   happy to tender that to the Court.

20            Then they said they represented Dr. Guterman with

21   respect to some matters and not others.  So it is entirely

22   confusing who McDonald Hopkins represents when.  They change

23   their position constantly.

24            When that phone call was made, I had a letter that

25   Mr. Berk expressly wrote that said that they did not represent

1  Dr. Guterman.  So now they claim I violated the ARDC rules.

2          THE COURT:  Does McDonald Hopkins currently represent

3  Dr. Seth Guterman?

4          MR. FLYNN:  I believe they represent him for certain

5  purposes, yes.

6          THE COURT:  Do they represent -- does McDonald Hopkins

7  represent Dr. Seth Guterman as a third-party witness being

8  subpoenaed in this case?

9          MR. FLYNN:  I don't know if that's been determined,

10  Judge.

11          THE COURT:  All right.  So how do you -- does McDonald

12  Hopkins represent Dr. Guterman as a interested party in the

13  case of Tucker versus Kimberly Alise, 11-1089?

14          MR. FLYNN:  I'm not sure -- I really don't know the

15  answer to that question.

16          MS. TUCKER:  Your Honor, we have --

17          MR. FLYNN:  But Dr. Guterman --

18          MS. TUCKER:  -- letters --

19          MR. FLYNN:  -- has been sued in the state court

20  action.  Will they represent him in that case?

21          THE COURT:  Are you -- are you representing Guterman

22  in the state court case?

23          MR. FLYNN:  I am not.

24          THE COURT:  Okay.  So give me a clue here --

25          MR. FLYNN:  When an attorney calls and says,

1  Dr. Guterman, this is Debra Tucker, your lawyers lost the big

2  motion today, what she's doing is acknowledging that there is a

3  representation.  Now this was not today, it was not yesterday,

4  it was at some point in the past where she presumably believed

5  that Mr. Guterman, Dr. Guterman was represented.  And that is

6  the point, she knows of the representation, and yet she is

7  abusing and contacting represented parties.

8       All I'm saying is for purposes of this litigation, if

9  she needs to contact McDonald Hopkins attorneys, I'm allowing

10 her to contact three of them.  The rest of them are my

11 clients.  I'd like to keep my clients under my control.

12      MS. TUCKER:  Your Honor, I can -- I'm sorry to

13 interrupt, but I cannot let these allegations of professional

14 misconduct stand unrefuted on the record.

15      When I called Dr. Guterman, I had in my possession a

16 letter from Mr. Berk that said in no uncertain terms that

17 McDonald Hopkins does not represent Dr. Guterman.  McDonald

18 Hopkins has historically, for years and years, been

19 Dr. Guterman's lawyers.  So when I said in this voicemail, your

20 lawyers lost a big motion today my reference was that these are

21 generally and have been in the past Dr. Guterman's lawyers.  At

22 some point they apparently abandoned that representation and

23 they notified me of that in writing.

24      Since that time they have been -- said they

25 represented Dr. Guterman with respect to certain issues and not

1  others.  And I have repeatedly asked them in correspondence to

2  identify precisely what matters they represent Dr. Guterman in

3  and precisely which matters they don't represent Dr. Guterman

4  in so that I know how to comply with my professional

5  obligations to not communicate with a represented party.

6      I have not committed any ethical violations.  And even

7  if I had, this is not the appropriate forum for Mr. Flynn to be

8  raising these disputes.  He doesn't even represent

9  Dr. Guterman.  And he's complaining about my communications

10 with Dr. Guterman.

11     MR. FLYNN:  This is a pattern, Judge.  I have not

12 abandoned any representation.  I'm instructing her not to

13 contact my clients.

14     THE COURT:  And your client is McDonald Hopkins, LLC

15 and its personnel.

16     MR. FLYNN:  Correct.

17     THE COURT:  And you have got an appearance on file in

18 this case on behalf of McDonald Hopkins, LLC, as something

19 called respondent.  And is that as a respondent to a third-

20 party subpoena served on it?

21     MR. FLYNN:  Yes.  As well as notices for deposition

22 for individual attorneys.  I believe there are about five of

23 them if I am not mistaken, Judge.

24     THE COURT:  Okay.  And do you represent McDonald

25 Hopkins in this other state court litigation?

1    MR. FLYNN:  I do.  They were -- the lawsuit was just

2  filed served on May -- I'm sorry -- filed on May 1st

3    THE COURT:  Uh-huh.

4    MR. FLYNN:  And they were served.  So I will be filing

5  an appearance and a responsive pleading for McDonald Hopkins,

6  Steve Harris, and Peter Berk.

7    THE COURT:  And so what you are requesting is that --

8  but your status in this case is representing McDonald Hopkins

9  as the recipient of a third-party subpoena from the plaintiff.

10    MR. FLYNN:  Yes.

11    THE COURT:  Okay.  And so what you are requesting is

12  that -- I mean, it seems to me what you have standing to

13  request before me is that Ms. Tucker not contact individual

14  attorneys at McDonald Hopkins relating to the matters in the

15  third-party subpoena.  Right?  I mean, isn't that what you have

16  standing to do?

17    MR. FLYNN:  It is.  But the third-party subpoenas

18  again arise out of this counterclaim for legal malpractice.

19    THE COURT:  Uh-huh.

20    MR. FLYNN:  And the legal malpractice counterclaim is

21  the tort, which is the basis for the contribution action in

22  state court.

23    THE COURT:  Uh-huh.

24    MR. FLYNN:  So all of these issues are related.

25    THE COURT:  Well, they are related, but you are

1    representing McDonald Hopkins in this case --

2         MR. FLYNN:  Yes.

3         THE COURT:  -- as a respondent to a third-party

4    subpoena seeking certain information.

5         MR. FLYNN:  Correct.

6         THE COURT:  Seems to me that it is at least legitimate

7    for you to say to Ms. Tucker, if you want information covered

8    by that third-party subpoena to my client, then your

9    communications about that third-party subpoena should be

10   directed to me, George Flynn --

11        MR. FLYNN:  Yes.

12        THE COURT:  -- because I am counsel McDonald Hopkins,

13   LLC.  Okay?

14        To the extent though you are saying more broadly you

15   don't want Ms. Tucker to contact anybody at McDonald Hopkins

16   about anything related to this case, like when are you going to

17   respond to -- when is your client going to respond to

18   discovery, or can we enter into a briefing schedule on a motion

19   to compel, or can you clarify your answer to Interrogatory

20   Number 4, sounds to my me like that's beyond the scope of your

21   representation of this client, unless you're going to say that

22   I represent this client for any and all purposes and I'm going

23   to unilaterally decide who she can talk to, who Ms. Tucker can

24   talk to about something and who she can't.  Okay?

25        And I'm not sure where you get off saying that,

1    frankly, because I don't have federal -- Rule 4.2 of the Rules

2    of Professional Responsbility in front of me, but I think it

3    says, a lawyer can't communicate with a represented client and,

4    I think, about the matters that are subject to that

5    representation.  Right?  Or is it --

6              MS. TUCKER:  If -- and it also says, without consent

7    or as otherwise permitted.  The language is something similar

8    to that.

9              They are opposing counsel.  And just to be clear, even

10   with respect to, for example, the notices -- the subpoenas for

11   their deposition, Ms. Alise's counsel has to be involved in

12   that because, for example, we have to schedule the dates of

13   those.  Ms. Alise's counsel is entitled to be present for those

14   depositions.

15             THE COURT:  Uh-huh.

16             MS. TUCKER:  So even to stay that we cannot contact

17   them about -- Ms. Alise's counsel about discovery to a third

18   party is improper.

19             Another example, we have to give Ms. Alise's counsel

20   notice before we serve a subpoena for documents.  How are we

21   supposed to give that notice to Ms. Alise's counsel if I cannot

22   provide that notice, according to Mr. Flynn, because I have got

23   to send that to Mr. Flynn?  How am I supposed to comply with

24   the Federal Rules?

25             THE COURT:  But is there -- he's --

1    MR. FLYNN:  I thought I was being reasonable about it.

2    THE COURT:  He said you could send a notice to

3  Mr. Berk.  He is suggesting that you send a notice to Mr. --

4    MS. TUCKER:  He is not --

5    THE COURT:  -- Berk.  He's saying that for clarity

6  purposes that with respect to matters in this litigation, you

7  can communicate with Mr. Berk, Jacobi, and --

8    MR. FLYNN:  Kessler.

9    THE COURT:  -- Kessler.  Okay?

10    Which is interesting to me because the last time I was

11  involved Harris was pretty much involved.  Okay?

12    But putting that aside, you're saying that right now,

13  given the current state of affairs, those are the three people

14  who are handing this litigation.

15    MR. FLYNN:  Correct.

16    THE COURT:  Okay?  And what you are saying further is

17  that there is nobody else at Hopkins who is going to

18  communicate with Ms. Tucker about this litigation, 11 C 1089.

19    MR. FLYNN:  Not without my permission, Judge.  That's

20  what I am trying to get control of here.

21    MS. TUCKER:  So we're not to talk to Mr. Harris about

22  settlement according to Mr. Flynn.

23    MR. FLYNN:  That's right.

24    THE COURT:  Yeah.  That's what's he's saying.

25    MR. FLYNN:  Because --

1         MS. TUCKER: Because you sued them and because they

2 are a third-party deponent.

3         But, P.S., unless you have made a whole lot of

4 progress since the last time you were in front of me, I'm not

5 sure what kind of discussions are going to be productive with

6 Mr. Harris about settlement.

7         MS. TUCKER: Mr. Harris has been calling Mr. Saikely

8 so --

9         THE COURT: Okay. But --

10         MR. FLYNN: I called Mr. Saikely myself, and that's my

11 role, and I don't want Steve Harris to call him anymore.

12         THE COURT: Okay.

13         MR. FLYNN: -- that's what I am trying to do, Judge.

14         THE COURT: Okay. But if your client picks up the

15 phone and calls either Ms. Tucker or Mr. Saikely --

16         MR. FLYNN: He won't.

17         THE COURT: Well, he has. Okay?

18         MS. TUCKER: And represents Ms. Alise.

19         MR. FLYNN: I was just recently retained though.

20 That's not my point is that I am trying to explain that going

21 forward she's not to contact them.

22         THE COURT: Okay. Well, look, I don't how far to wade

23 into this. I don't know even know what the state court

24 complaint is. Okay?

25         I mean, Ms. Tucker, what I will tell you is that you

1    got to walk on the rocks in the river here.  Okay?  And I don't

2    pretend to know where all those rocks are.  But to the extent

3    that McDonald Hopkins now has counsel as a third-party deponent

4    or recipient of a subpoena in this case or a defendant in the

5    case in state court, prudence would dictate that you

6    communicate with counsel for that represented party with

7    respect to those matters.

8           MS. TUCKER:  And we do.  But there are certain

9    situations where we have to communicate with them as opposing

10   counsel.  And I have given examples.  We have to give notices

11   of a subpoena.  We have to coordinate the deposition schedule.

12   When somebody is on a 37.2, we can't kick them off the 37.2.

13          THE COURT:  But I think -- right.  And I think what

14   Mr. Flynn is saying is, if you have got a notice for a

15   deposition or you got a document to serve, it should go to

16   Berk, Jacobi or Kessler.  All right?

17          Right, Mr. Flynn?

18          MR. FLYNN:  Exactly.

19          MS. TUCKER:  With respect to McDonald Hopkins's

20   subpoenas.

21          THE COURT:  No, with respect to anything involving the

22   litigation of the case number of 11 C 1089.

23          Okay.  With respect -- and if you are subpoenaing or

24   noticing the deposition of Dr. -- of Hopkins -- of McDonald

25   Hopkins in this case, so it is a notice of deposition in 11 CV

1    1089, and McDonald Hopkins is representing Alise in this case

2    and therefore is entitled to notice of a deposition of any

3    third party, including McDonald Hopkins, that notice of

4    deposition should go to Berk, Jacobi or Kessler and to Flynn

5    because it involves his separate client.  Okay?

6              It is not confusing here.  This is not confusing.  All

7    right?

8              To the extent, Mr. Flynn, that somebody other than

9    Berk, Kessler or Jacobi gets on the phone in the 37.2

10   conference or sends Ms. Tucker a letter saying, we object to

11   discovery or anything relating to the ongoing litigation of 11

12   C 1089, therefore have inserted themselves in representing

13   Alise, I guess I don't see anything improper right now with

14   Ms. Tucker communicating with that person who communicates at

15   their instance.

16             You're going to try and stop that --

17             MR. FLYNN:  I would agree with you.

18             THE COURT:  You're (unintelligible) out of luck.

19             MR. FLYNN:  Yeah, I would agree with your analysis.

20             THE COURT:  All right.  So --

21             MS. TUCKER:  Wait.  So to be clear, every single

22   document that we send to McDonald Hopkins, we now have to send

23   to Mr. Flynn.

24             THE COURT:  No, no, that's --

25             MR. FLYNN:  No.

1       THE COURT:  Ms. Tucker, that's not what I said.  That

2   is not what I said.  And I'm not going to repeat what I said.

3   Okay?

4       Well, apparently I have to repeat it.  I am saying --

5   I'm saying -- I have said so far two things.  One,

6   communications that are part of 11 C 1089 -- I'm not ruling on

7   anything, I'm just mediating this on the record.  All right?

8   But it seems to me that what Mr. Flynn is asking is that --

9       MS. TUCKER:  Well --

10      THE COURT:  -- is that if you have a notice of

11  deposition where John Smith in 11 C 1089, that doesn't have to

12  go to Mr. Flynn, unless John Smith happens to be a McDonald

13  Hopkins employee.  But I'm not saying that.  Okay?  John Smith

14  is the gardener for Ms. Alise.  You want to subpoena that

15  person for some reason.  The notice of deposition gets served

16  on either or the following three people:  Berk, Jacobi

17  Kessler.

18      You want to serve a pleading, it goes to Berk, Jacobi,

19  Kessler.

20      Your want to send a letter about scheduling something,

21  it goes to Berk, Jacobi, Kessler.

22      Okay?  You want to -- you want to set up a deposition

23  of a McDonald Hopkins person pursuant to a third-party

24  subpoena served on McDonald Hopkins or the underlying

25  litigation in state court, that communication goes to Flynn.

1    Okay?

2         MS. TUCKER:  But we also have an obligation to send it

3    to the opposing -- Alise's counsel even --

4         THE COURT:  And to Berk.  And Berk, Jacobi or Kessler.

5         MS. TUCKER:  Right.

6         THE COURT:  Okay?  And to the extent that someone else

7    at McDonald Hopkins picks up the phone says, I want to talk to

8    you about these discovery responses, I want to talk to you

9    about the gardener's deposition, I don't think Mr. Flynn -- I

10   think Mr. Flynn would like that to not to happen, but Mr. Flynn

11   -- and Mr. Flynn has instructed that not to happen.  But he

12   doesn't know that it is not going to happen.  And he knows that

13   he is on really thin ground coming here and saying, I object to

14   Ms. Tucker talking to Mr. So and so who picked up the phone to

15   call her.  Okay?  That would be silly.  All right?

16   Because -- because -- that just would be silly.

17        MS. TUCKER:  Well, but that's precisely what he's

18   doing.

19        THE COURT:  Well, he is --

20        MS. TUCKER:  Because we're not reaching out --

21        THE COURT:  He's going over -- .

22        MR. FLYNN:  When are we talking about?

23        MS. TUCKER:  We are not reaching out and contacting

24   these people.

25        THE COURT:  And I think what he's now saying is

1  because you have sued McDonald Hopkins and because McDonald

2  Hopkins is a witness here and because Harris is so integrally

3  involved in all this, he would prefer that you, Ms. Tucker, not

4  communication with Mr. Harris.

5          MS. TUCKER:  I don't communication with Mr. Harris.

6          THE COURT:  And I am not going to weigh into that

7  right now.  If Mr. Harris and Mr. Saikely want to talk, more

8  power to them, to my way of thinking.

9          Mr. Harris is a big boy.  He can talk to whoever he

10  wants to talk to or not.  All right?  But I think it is prudent

11  if you sue -- if you have sued a party -- well, I'm not going

12  to go any further.  I mean, I don't think there is a

13  disagreement among you, I really don't.

14          MS. TUCKER:  Yes, there --

15          MR. FLYNN:  I would even offer a reciprocal --

16          MS. TUCKER:  -- is.

17          THE COURT:  What's the disagreement, Ms. Tucker?

18          MS. TUCKER:  He says, I can't send -- I can't copy

19  Jenny McGovern even though she is Alise's counsel in this case,

20  that I cannot copy her on correspondence.

21          THE COURT:  Okay.

22          MS. TUCKER:  I cannot copy Mr. Harris on

23  correspondence, even though he is Alise's counsel in this case.

24          MR. FLYNN:  My clients don't want to be receiving

25  these letters at 10:00 o'clock at night on a Friday, Judge.

1    I'm trying to protect them in part.  It is sufficient for her

2    to contact the lawyers we have --

3              THE COURT:  I suggest -- I suggest that your client,

4    McDonald Hopkins, put in writing to Ms. Tucker a letter in the

5    captioned case Tucker Firm versus Kimberly Alise, 11-1089,

6    asking nicely that any communications from this point forward

7    involving litigation of this case toward trial be sent to

8    whoever you want it to be sent to.

9              And if McGovern is not a person who you want

10   communications to be sent to anymore and Harris is not a person

11   that you want to be copied on communications, then I suggest

12   they send a letter to Ms. Tucker saying that.

13             MR. FLYNN:  (Unintelligible).

14             THE COURT:  Okay?

15             MR. FLYNN:  Thank you.

16             THE COURT:  Okay.  So that -- she's got a list of who

17   now going forward with McDonald Hopkins as counsel to Ms. Alise

18   wants to be communicating about this underlying litigation.  I

19   am sure -- I betcha -- that if Ms. Tucker got that letter, she

20   would honor their request.

21             Right, Ms. Tucker?

22             MS. TUCKER:  Yes.

23             THE COURT:  So I suggest you do that.

24             MR. FLYNN:  Thank you.

25             THE COURT:  I think Ms. Tucker knows well enough that

1    if is she is talking about communicating with McDonald Hopkins

2    as a third-party deponent, producer of documents or defendant

3    in a case in which you represent that firm or its partner, I

4    bet you she knows she should talk to you about that and not

5    those individually represented partners.  Okay?

6           But it sounds to me like if you could clarify this, it

7    will be clear going forward.  And if there are infringements on

8    that going forward, you can deal with it.

9           MR. FLYNN:  Okay.

10          THE COURT:  I do not blame Ms. Tucker for

11   communicating -- I mean, this case is now two and a half years

12   old, and when I was involved in it up to about six or eight

13   months ago before I was not involved in it -- well, when I was

14   involved in it, Mr. Harris was pretty integral to the

15   discussions.  I spoke to Mr. Harris.

16          MR. FLYNN:  I understand, Judge.  But now she's sued

17   him.

18          THE COURT:  Okay.  That's fine.

19          MR. FLYNN:  That's a game changer.

20          THE COURT:  Look, I got another case.

21          MR. FLYNN:  Okay.

22          THE COURT:  I think if you put this in black and

23   white, you will clarify the boundary lines.

24          MR. FLYNN:  Thank you.

25          MS. TUCKER:  Thank you, your Honor.

1       (Which concluded the proceedings.)

2                        CERTIFICATE

3       I certify that the foregoing is a correct transcript

4   from the digital recording of proceedings in the above-entitled

5   matter to the best of my ability, given the limitation of using

6   a digital-recording system.

7

8

9   */s/Pamela S. Warren*                June 6, 2013
    Official Court Reporter              Date
10  United States District Court
    Northern District of Illinois
11  Eastern Division

12

13

14

15

16

17

18

19

20

21

22

23

24

25