# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| THE TUCKER FIRM, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 1:11-cv-1089 |
| KIMBERLY ALISE | ) Judge John W. Darrah |
| | ) Magistrate Judge Jeffrey T. Gilbert |
| Defendant. | ) |
| KIMBERLY ALISE | ) |
| Counter-Plaintiff, | ) |
| v. | ) |
| DEBRA TUCKER, and THE TUCKER FIRM, LLC | ) |
| Counter-Defendants. | ) |

**TUCKER'S BRIEF IN SUPPORT OF ITS MOTION FOR RELIEF UNDER RULE 37**

Throughout this litigation, the Plaintiff and Counter-Defendant The Tucker Firm, LLC and the Counter-Defendant Ms. Debra Tucker (collectively, "Tucker") have respected the sanctity of the judicial process and exerted herculean efforts to comply with discovery to bring the merits of this case to the forefront. In stark contrast, the Defendant and Counter-Plaintiff Ms. Kimberly Alise ("Alise") and her counsel, McDonald Hopkins LLC ("McDonald"), have unrelentingly exploited the procedures of this Court to suffocate discovery until its unceremonious close on June 28, 2013, thereby preventing Tucker from obtaining a fair trial on Alise's $2.9 million malpractice Counterclaim against Tucker. As detailed herein, the Court should impose sanctions against Alise pursuant to Federal Rule of Civil Procedure 37 to remedy the injustice of this situation, including sanctions authorized by:

> (1) Rule 37(b)(2)(A) for Alise's failure to obey this Court's November 28, 2012 Order on Discovery entered under Rule 26(f) ("Order on Discovery") requiring Alise to schedule depositions in this matter;
>
> (2) Rule 37(d)(1)(A)(i) for Alise's failure to appear for her own deposition;
>
> (3) Rule 37(d)(1)(A)(ii) for Alise's failure to provide sufficient answers to Tucker's interrogatories and responses to Tucker's document requests; and
>
> (4) Rule 37(c)(1) for Alise's failure to provide information and documents on her claimed damages as required by Rule 26(a)(1)(A)(iii) and (e) and by the Order on Discovery.

Section I of this Brief details how McDonald, acting on Alise's behalf, has violated and abused the Order on Discovery and the Rules of Civil Procedure to delay and/or obstruct all depositions that Tucker sought to take in this case, including the deposition of Ms. Alise herself. Section II details Alise's failure to provide sufficient interrogatory answers and to produce documents, and McDonald's thwarting third parties from producing documents. Section III proves that while Alise has evaded discovery, Tucker has obediently complied with Alise's completely unreasonable discovery requests.

1

As is surely McDonald's design, McDonald already has substantially depleted Tucker's finite financial resources to defend herself against Alise's baseless $2.9 million malpractice Counterclaim and Tucker simply cannot continue to attempt to combat McDonald's malfeasance, which is backed by tremendously superior resources, including Alise's self-reported income of over $600,000 a year, the vast financial resources of Dr. Guterman (a self-proclaimed, highly successful doctor who informed Tucker that his legal fees in this case are less than one percent of his income), the manpower of a law firm that employs hundreds of attorneys, and the benefits under McDonald's insurance policy. Thus, it is now abundantly apparent that Tucker cannot obtain a fair trial on the merits of the parties' claims even if, for example, fact discovery were extended, as an extension would only subject Tucker to more abuse by McDonald and the fatal milking of Tucker's resources. As a result, Tucker requests by this Motion that this Court impose sanctions as authorized by Rule 37 to prevent this case from being determined by the recalcitrant conduct of McDonald rather than by the merits of the parties' claims.

Specifically, Rule 37 permits this Court to award sanctions for Alise's violation of each of the Rule 37 subsections listed above that include, "prohibiting the disobedient party from supporting or opposing claims or defenses, or from introducing designated matters in evidence", "dismissing the action or proceeding in whole or in part", and/or ordering Alise and/or McDonald "to pay the reasonable expenses, including attorney's fees, caused by [Alise's] failure". Fed. R. Civ. P. 37(b)(2)(A)(ii) and (v); Fed. R. Civ. P. 37(b)(2)(C). *See also* Fed. R. Civ. P. 37(c)(1)(A) and (C); 37(d)(3). *See, e.g. Johnson v. J.B. Hunt Transport, Inc.* 280 F.3d 1125, 1132 (7th Cir. 2002) (affirming the barring of witnesses as a sanction for the defendant who failed to produce witnesses at depositions after failing to respond to written discovery in a timely manner and who used the absence of these discovery responses as a basis to delay depositions). There is no scenario more fitting than this case for these sanctions to be employed and no persons more deserving than Alise

and McDonald to be sanctioned. In the alternative, albeit not a sufficient or equitable remedy for Alise's and McDonald's misconduct, the Court should issue an order pursuant to Rule 37(a)(1) compelling Alise to schedule the depositions of all of the persons described herein who Tucker has sought to depose and mandating that the depositions proceed in a timely manner.

I.  **ALISE'S VIOLATIONS AND ABUSE OF THE ORDER ON DISCOVERY AND THE RULES OF CIVIL PROCEDURE TO PREVENT DEPOSITIONS.**

Alise persistently has violated and abused the Order on Discovery and the Federal Rules of Civil Procedure to prevent depositions of all but two witnesses sought by Tucker, including preventing the deposition of Alise herself. On September 26, 2012, Tucker provided McDonald an initial list of nine individuals (within the then-effective ten deposition limit) that Tucker intended to depose in this case (Sept. 26, 2013 Letter, Exh. A), and Tucker subsequently issued a notice or subpoena for the depositions of eight of these individuals. Thereafter, McDonald responded by claiming that McDonald was unavailable for *all eight* pre-selected dates, while failing to timely offer viable alternatives. This peculiar behavior by McDonald foreshadowed the months of stonewalling that McDonald would employ to counter Tucker's unyielding attempts to obtain depositions in this case.

McDonald must have realized that their initial delay tactics could not survive for long under the Federal Rules of Civil Procedure as written because Tucker could have simply selected deposition dates unilaterally and issued a notice of deposition to Alise and subpoenas commanding third parties to appear to be deposed or be held in contempt of court. As a result, in October and November 2012, McDonald manipulated the Court's Order requiring the entry of a joint discovery plan into a golden opportunity for McDonald to literally re-write the rules to require Tucker to follow an elaborate "protocol" to first obtain from McDonald a date for any deposition that Tucker

3

sought.[1]  (Dkt. #142 ¶3.)  On November 28, 2012, the Court adopted McDonald's protocol in its Order on Discovery, despite Tucker's vehement objections to McDonald and Tucker's prior attempt to submit to the Court a competing discovery plan.

One of the few redeeming features of McDonald's protocol was that it at least required that a party receiving a request for deposition dates "shall select one or more of the [three] offered dates for each deposition" and that "if none of the offered dates are available, the opposing party shall provide at least 3 alternative dates." (Order on Discovery ¶3b, Dkt. #149.)  But, as demonstrated below, McDonald persistently would violate the requirement to provide depositions dates for the depositions Tucker sought, would claim blanket unavailability until dates far into the future, and when Tucker would finally overcome all of McDonald's violations and other obstructions so as to actually get a deposition date established, McDonald would cancel the deposition shortly before it was scheduled to occur, thereby starting the process all over again.  While Tucker has never cancelled a deposition, Alise and her cohorts have cancelled fifteen scheduled depositions (some more than once); nine of which were cancelled within one week of the deposition date; and four of which were cancelled less than twenty-four hours before the deposition.

Importantly, McDonald prevented Tucker from filing a Motion with the Court to expose and remedy McDonald's violations by employing a number of other nefarious tactics, such as, but certainly not limited to, objecting to Tucker's threat of filing a Motion on the purported ground that Tucker had not sufficiently complied with Rule 37.2, delaying in scheduling the Rule 37.2 conference, postponing the Rule 37.2 once the scheduled date had arrived, and/or making promises of future performance or becoming compliant temporarily, thereby negating the Motion, only to

---

[1] Importantly, it was McDonald, and not Tucker, who proposed that the ten witness limit on depositions be increased to twenty.  One of the many perverse consequences of McDonald's discovery plan was that it would require *seven weeks* (seven requests containing no more than the limit of three witness names each, with one week for McDonald to respond before Tucker could issue another request for dates of additional witnesses) just to establish the deposition dates of the twenty witnesses, even assuming that McDonald outright accepted one of the three deposition dates proposed by Tucker for the witness.

4

resume McDonald's recalcitrance in the future. Effectively, McDonald mutated discovery in this litigation to be a costly fool's errand, while placing a muzzle on Tucker.

As a result of McDonald's misconduct, Tucker has successfully taken only two depositions in this case - Alise's subsequent employer Dr. Van Wagner of Sandlot LLC pursuant to an order of this Court and Dr. Guterman's divorce attorney, Mr. David Ainley, just four days ago. Because of the enormous volume, it is extremely difficult to synthesize into a concise brief the months of excuses, calculated delay, and gamesmanship that McDonald had employed.[2] Accordingly, attached as Exhibits B through E is a chronology illustrating some of McDonald's violations and obstruction with respect to the depositions that Tucker has sought. The brief summaries below attempt to encapsulate McDonald's conduct, but neither these summaries nor the chronologies can possibly reveal the extent and severity of the misconduct.

### A. Ms. Kimberly Alise

The first five months of McDonald's delay from September 26, 2012 to February 25, 2013 with respect to Alise's own deposition primarily involved McDonald repeatedly promising to obtain Alise's availability for her deposition. On February 25, 2013, McDonald attorney Mr. Peter Berk finally squeezed only one available date out of Alise: June 26, 2013. Tellingly, this date was only two days before the June 28, 2013 close of fact discovery and was offered on the condition that the deposition occurs in Texas. When Tucker offered over seventy earlier dates to take the deposition and considered acceding to Berk's improper demand that the deposition occur in Texas if that would cause the date to be earlier, Berk refused these requests. Berk even had the gall to refuse on November 16, 2012 to provide dates for Alise's deposition on the ludicrous grounds that Tucker had offered *too many* dates for Alise's deposition. Given no dates other than one and having already

---

[2] If the Court finds it necessary or if Alise contends that Tucker is making misrepresentations, Tucker is more than willing to provide the Court with *all* of the communications exchanged between Tucker and Berk substantiating Tucker's statements contained herein.

expended an enormous amount of resources to attempt to obtain an earlier date, Tucker issued on April 16, 2013 the notice of deposition for Alise to sit for her deposition on June 26, 2013.

But, when the long-awaited June 26th date for Alise's deposition was finally about to arrive, McDonald unexpectedly cancelled Alise's deposition on June 18th, just eight days before the deposition was scheduled to occur and without providing any legitimate excuse. To add insult to injury, McDonald then demanded on June 21st that the deposition of a former Tucker attorney, Ms. Kirstin Ives, occur on the June 26th date that Alise's deposition was supposed to have occurred. Apparently, Alise sees fit to engage in guerrilla litigation by filing a Counterclaim for $2.9 million dollars against Tucker and then hiding from discovery until its close. (*See* Alise Chronology, Notice of Deposition, and Letters, Exh. B.)

**B.     Dr. Seth Guterman**

Dr. Guterman was Alise's opponent in the underlying litigation and Guterman is intensively involved in this litigation, as a result of his illicit agreement to defend and indemnify Alise against Tucker's attorneys' fee claim. Tucker's persistent efforts to depose Guterman have been circumvented by last-minute cancellations and by McDonald's constantly shifting position as to its representation of Guterman. Initially, Tucker served a subpoena on Guterman on October 15, 2012 for Guterman's deposition to occur on November 14, 2012. The day before that scheduled deposition, Berk cancelled the deposition without any explanation and told Tucker that "there is no need for [Tucker] to contact [Guterman]". After wading through the vagaries and murkiness of McDonald's representation of Guterman, Tucker was finally informed by Berk on March 4, 2013 that, despite Tucker having offered entire months of availability, Guterman (apparently flooded with more important commitments than the $2.9 million lawsuit that he is driving), can only sit for his deposition on one date: June 28, 2013. Not coincidentally, this date is the final day of discovery and

6

would prejudice Tucker by precluding her from issuing any follow-up discovery relating to Guterman's testimony.

Given no other options, Tucker served another subpoena on Guterman on April 16th to at least lock in the June 28th date. However, just eight days before the long-awaited June 28th deposition date was to arrive, McDonald began manufacturing an argument that somehow Tucker had cancelled Guterman's deposition by making an offhand comment at an unrelated hearing held on June 10, 2013 before Magistrate Judge Gilbert. Tucker and Magistrate Judge Gilbert both clearly informed McDonald that Tucker never stated that Tucker would cancel Guterman's deposition. But, Berk has not changed his position. (*See* Guterman Chronology, Subpoenas, and Letters, Exh. C.)

### C. Mr. Peter Berk

Berk represented Guterman and his companies *against* Alise in the underlying litigation and *opposed* the positions that Alise must now *sustain* to succeed on her $2.9 million malpractice claim against Tucker. Berk, the attorney most actively involved in litigating this matter, has been able to appear in Court for numerous hearings on dates unilaterally selected by the Court, has had time to write copious letters, and to partake in a multitude of 37.2 conferences objecting to Tucker's discovery. Yet, he claims to be too busy to sit for seven hours for his own deposition because of the challenges of his "other commitments".

Indeed, it took Berk *five months* to finally provide Tucker on February 11, 2013 with dates for his deposition. Not surprisingly, however, the only dates he offered were more than two months later on April 15, 16 and 18th, and Tucker immediately confirmed the April 15th date. But, when April 15th approached, Berk cancelled the deposition ten days beforehand on April 5, 2013. Unbelievably, Berk cancelled the deposition solely because Berk had received a draft of the state court complaint that Tucker planned to file asserting contribution claims against McDonald and Berk. However, Berk's surprise was disingenuous considering that more than four months earlier,

7

on November 27, 2012, Berk had claimed that McDonald was "unable to proceed with [any] discovery in this case" because Tucker had sent letters to McDonald notifying McDonald of her contribution claims. True to form, McDonald reversed course and continued to represent Alise once the immediate threat of Berk's deposition had been averted. Now, Berk, who along with the other attorneys at McDonald are represented by Mr. George Flynn ("Flynn") of Clausen Miller PC, has refused to provide any dates for Berk's deposition in direct violation of the Order on Discovery. (*See* Berk Chronology and Letters, Exh. D.)

D.     **Mr. Steven Harris and Ms. Lisa Lauer**

Mr. Harris and Ms. Lauer also are attorneys at McDonald who represented Guterman and his companies in the underlying litigation. Inexplicably, it has proven to be a monumental task to get Harris and Lauer to agree to dates to sit for their depositions. On September 26, 2012, Tucker requested their availability. After delaying for an entire month under the ridiculous guise of "checking into dates", Berk did not provide any dates whatsoever, but rather claimed on November 27, 2012 that McDonald "is unable to proceed with [any] discovery in this case" – a position that McDonald's actions immediately contradicted given that McDonald's proposed protocol was entered by the Court on the very next day. On February 4, 2013, Tucker again requested the availability of Harris and Lauer, only to be told that both Harris and Lauer were unavailable for the entire month of February and then (ignoring the existence of March as a month) Berk only offered to schedule their depositions for *two months later* in April. But, once April arrived, McDonald reneged and cancelled both depositions. Not to be deterred, Tucker subpoenaed Lauer to sit for her deposition on May 6, 2013. However, in response, McDonald's attorney Flynn violated the Order on Discovery and the subpoena by refusing to produce Lauer for Lauer's deposition and refusing to provide any other dates for the depositions of Lauer or Harris. (*See* Lauer & Harris Chronology, Exh. E.)

E.     **Mr. Richard Kessler and Ms. Jennifer McGovern**

8

Once McDonald successfully increased the deposition limit from ten to twenty, Tucker requested to depose Mr. Kessler and Ms. McGovern, who also are attorneys at McDonald that represented Guterman and his companies in the underlying litigation. In March, 2013, these depositions were scheduled to occur *two months later* in May 2013, but McDonald cancelled them once the deposition dates grew close. Since then, Flynn has refused multiple times to provide any dates for the depositions. (*See* Kessler & McGovern Chronology, Exh. E.)

**F.  Mr. John Gutzke**

Mr. Gutzke ostensibly represented Alise as her lawyer in settling the underlying litigation, in which Alise claims that she suffered $1.9 million of damages. Tucker scheduled Gutzke's deposition for November 14, 2012, then April 4, 2013, and then May 6, 2013, only for Berk or Gutzke's counsel to alternate in cancelling the deposition. Indeed, Berk and/or Gutzke's counsel have claimed at different times blanket unavailability from February 2013 to April 2013, and Berk even argued that he could not attend Gutzke's deposition because it was to occur *one week before* an evidentiary hearing that Berk had to attend in another matter. Now, Berk and Gutzke are outright refusing to schedule Gutzke's deposition, and Gutzke's counsel has declared that he "do[es] not care whether Ms. Tucker can agree to postpone Mr. Gutzke's deposition". (*See* Gutzke Chronology, Exh. E.)

**G.  Mr. Stephen Vranek**

Mr. Vranek is a relevant witness because he is Alise's accountant who has advised Alise on, and accounted for, the financial benefits that Alise received from ECDS and Malo and from the settlement of the underlying litigation. Vranek's deposition has been scheduled to occur on November 12, 2012 pursuant to a subpoena issued by Tucker, then on March 28, 2013, and then on May 10, 2013 pursuant to a subpoena issued by Tucker, only for it to be cancelled at the last minute. Berk's obstruction of Vranek's deposition has included, but is certainly not limited to, Berk: (1)

9

claiming that he was unavailable for the entire month of February; (2) failing to offer any dates for March or April; and (3) refusing to agree to the dates of May 1, 2, or 3, 2013 that Vranek's counsel proposed. Now, Vranek is refusing to sit for the deposition absent a court order or consent from Alise, which Alise has not provided. (*See* Vranek Chronology, Exh. E.)

### H. Mr. Matt Yeterian, Ms. Nancy DeYoung, and Ms. Joann Harper

Mr. Yeterian, Ms. DeYoung, and Ms. Harper are persons to whom ECDS outsources its financial operations. Since February 15, 2013, Tucker has attempted to schedule and take their depositions, but Berk has prevented it. For example, Berk refused to attend the deposition of Yeterian that had been proposed for Monday, June 3, 2013 because Berk planned to be out of town the weekend before. Rather than focusing on proposing dates for the depositions to occur prior to the June 28, 2013 discovery cutoff, Berk maneuvered to attempt to induce Tucker to agree to delay the depositions until after the cutoff, without providing any specific dates for all the deposition to in fact occur. Currently, the depositions are not scheduled because no one other than Tucker will provide their availability. (*See* Yeterian, DeYoung, & Harper Chronology, Exh. E.)

### I. Mr. Marc Davis, Ms. Linda Cummings, Mr. John Argo

Mr. Davis, Ms. Cummings, and Mr. Argo also are persons to whom ECDS outsources its financial operations. Since February 2013, Tucker has attempted to schedule their depositions. During the month of March 2013, Berk refused Tucker's repeated requests to provide his availability for the depositions. Later, Berk averted Cummings' deposition from occurring on the scheduled date of May 7 by inducing Tucker to agree to postpone it, based on Berk's illusory promise for all of the depositions of ECDS' financial personnel to occur at a later date, only for Berk to later renege by contending that Argo and Harper were "not part of our agreement to put depositions off". Currently, the depositions are not scheduled because no one other than Tucker will provide their availability. (*See* Davis, Cummings, & Argo Chronology, Exh. E.)

10

**J.      Ms. Bonnie Blaase**

On June 25, 2013, this Court held that Ms. Blaase is a person who Tucker is entitled to depose in this litigation. (Dkt. #293.) For months on end before this, McDonald transformed Tucker's attempts to depose Blaase as a perverse scavenger hunt. McDonald waited for Tucker to subpoena Blaase in Texas, only to inform Tucker that Blaase does not live in Texas. Then, when Tucker subpoenaed Blaase in Illinois, McDonald claimed that Blaase did not live in Illinois. Then when Tucker successfully subpoenaed Blaase in Maryland, Berk mentioned *for the first time* that Blaase's health would purportedly prevent her from sitting for her deposition. (*See* Blaase Chronology, Exh. E.)

**K.      Dr. Karen Van Wagner**

In August, 2012, Tucker first subpoenaed Dr. Van Wagner of Sandlot, LLC (where Alise was employed as CEO subsequent to being ECDS' CEO), for her deposition to occur in September 2012. At that point, Berk engaged in a childish game of chicken, refusing to provide his availability for the deposition until Van Wagner provided her availability. After five separate requests for Berk's availability and a Court Order requiring the same, Berk agreed for the deposition to occur in Texas on October 19, 2012. At 6:11 p.m., the night before the scheduled deposition, Tucker, who was already in transit to Texas, received a request from Berk to postpone the deposition based on a settlement offer made by Alise. Tucker agreed to postpone the deposition based on the offer and the condition that the deposition would occur during week of November 5, 2012 if the settlement was not consummated. But, once the deposition has been averted, the offer was replaced by a different offer, and the deposition did not occur during the week of November 5, 2012. The deposition was then rescheduled for November 30, 2012, and this date was solidified by the Court's Order on Discovery, which specifically mandated that "[t]he deposition of Karen Van Wagner in Forth Worth, Texas, shall proceed on November 30, 2012". But, in direct violation of this Order, McDonald

11

refused to proceed with discovery in this case, including the deposition of Van Wagner, citing to Tucker's potential contribution claims against McDonald.  Then, McDonald abandoned this position after successfully postponing Van Wagner's deposition a second time.  After multiple letters, motions before the Court, two cancellations of depositions, and two court orders, Van Wagner's deposition finally occurred *six months later* in March 2013.  McDonald even made blatantly false representations to this Court to attempt to avoid Van Wagner's deposition, and Alise likely did as well.  Specifically, Berk stated "Ms. Alise did not a [sic] submit a letter of recommendation from Dr. Guterman to Sandlot".  In fact, Alise had submitted a recommendation ostensibly by Dr. Guterman to Sandlot.  (Recommendation, Exh. F.)  Dr. Van Wagner testified that this recommendation was "heavily considered" and that Van Wagner's decision to hire Alise for the lucrative position as Sandlot's CEO was "substantially based on [Guterman's] recommendation".  (*See* Van Wagner Deposition Tr. 193:7-15.)  But, Dr. Van Wagner did not know that the extremely favorable content of the recommendation was directly contrary to the extremely derogatory statements that Dr. Guterman had made about Alise's job performance under oath in the underlying litigation.  (*See* Van Wagner Chronology, Exh. E.)

## II. ALISE HAS OBSTRUCTED ALL FORMS OF DISCOVERY.

Aside from blocking Tucker's attempts to take depositions, Alise pervasively has failed to provide herself, and McDonald has interfered with third parties providing, nearly all other forms of discovery in this litigation.  Tucker has detailed in other pleadings numerous additional ways in which Alise and McDonald have done so, which also justifies sanctions being imposed.  For example, Alise and McDonald have obstructed Tucker's discovery by:

(a) failing to provide a sufficient computation of each category of Alise's claimed damages and to provide the documents that bear on the nature and extent of the injuries she claims to have suffered, as is required by 26(a)(1)(A)(iii);

(b) failing to comply with the Order on Discovery mandating that Alise "supplement/correct [her] 26(a)(1) disclosures, if necessary, in response to objections raised by Tucker", which objections were set forth in letters by Tucker dated October 3 and 18, 2012 (Rule 26(a)(1) Objections, Exh. G);

(c) failing to produce *any* documents in response to Tucker's document requests, other than four improperly redacted pages, e-mails between Tucker and Alise that Tucker had already produced to Alise, and a selection of self-serving text messages and voicemails exchanged between Alise and the father of her children (Dkt. #224);

(d) first refusing to answer every single one of Tucker's interrogatories on the grounds that they contained too many subparts, and then giving incomplete and evasive answers wholly lacking in detail and persisting in other baseless objections (Dkt. #223);

(e) asserting serial objections to refuse to sign HIPAA releases to allow Tucker to obtain documents pursuant to subpoenas to Alise's insurance companies (Dkt. #223);

(f) advocating and aiding Guterman and his companies in refusing to produce any documents in response to Tucker's subpoenas (Dkt. #226);

(g) forbidding Alise's accountant to produce documents responsive to Tucker's subpoena, such that Tucker was required to file both a motion to compel and then a motion for a rule to show cause to finally obtain the scant production totaling only 187 pages a mere four days before the close of fact discovery (Dkt. #209); and

(h) baselessly seeking to quash subpoenas Tucker issued to the companies to which Guterman outsources the entirety of his companies' financial, accounting, payroll, and related business operations and then delaying their production of documents for two more weeks based on a mythical desire to appeal the Court's Order denying Alise's Motion to Quash. (Dkt. #213).

In other words, Alise has not only obstinately refused to respond to discovery served upon her directly, but also she and McDonald have put forth great effort to prevent nearly all of the third parties who Tucker as subpoenaed from producing relevant documents as well.[3]

---

[3] With their months of delay and abusive practices exposed, McDonald has tried to shift blame to Tucker for not issuing document requests to Alise until March 20, 2013. But, this issuance date was still more than three months before the close of discovery, and Alise herself has claimed that Tucker already has the documents that Tucker seeks from Alise. Alise's argument also fails to justify the stonewalling by Alise and McDonald that followed the issuance of the documents requests. In addition, Alise's argument ignores that Tucker would have had plenty of time to serve Alise with document requests had Tucker not had to spend the enormous amount of time and effort necessary for Tucker to combat Alise's and McDonald's pervasive malfeasance and to response to Alise's completely unreasonably discovery requests. Furthermore, Alise's documents pertaining to her claimed damages, which are one of the main categories that are lacking, were due from Alise pursuant to Rule 26(a)(1)(A)(iii) long before Tucker's document requests were issued. Tucker issued her documents requests in large part to make specific

### III. TUCKER HAS FULLY COMPLIED WITH ALL OF ALISE'S DISCOVERY REQUESTS DESPITE THEM BEING ENTIRELY UNREASONABLE AND IMPROPER.

Proving that no good deed goes unpunished, the imbalance between the parties has been widened, and the prejudice to Tucker has been intensified, because Tucker has taken the high road by complying with all of Alise's discovery, rather than mimicking Alise's delinquency. Specifically, nearly ten months ago on August 29, 2012, Tucker produced 64,700 documents. When this production did not satisfy Alise's insatiable appetite for discovery from Tucker, Tucker made available to Alise on February 8, 2013 *all* of Tucker's client files, except for confidential and privileged information contained in them. When Alise failed to show up to inspect the documents and insisted that Tucker rifle through all of her accounting records to find receipts for the costs Tucker charged to Alise (which costs Alise is not even disputing in this litigation), Tucker supplemented her production by e-mailing McDonald copies of 1,482 documents.

Tucker also has been extremely pro-active in scheduling the deposition of Tucker's personnel. Tucker offered to Alise on October 31, 2012 blanket availability for Ms. Tucker's deposition. Again, on January 23, 2013, Ms. Tucker offered to schedule her deposition, but McDonald still did not respond. Finally, on March 19, 2013, Berk proposed that Ms. Tucker's deposition occur between June 19 and June 21, 2013. Within two days of the offer, Ms. Tucker agreed to June 19, 2013. But, one week before the deposition, which by then had been scheduled for three months, Berk requested to postpone the deposition to an unknown "later date". Ms. Tucker refused that request because of the impending close of discovery. Then, less than 24 hours before Ms. Tucker's deposition, Berk cancelled the deposition because Berk is "out sick and therefore cannot take [Ms. Tucker's] deposition as scheduled". To remedy the situation, Ms. Tucker

---

requests for documents from Alise to attempt to overcome Alise's position that the documents were not in fact required to be produced by Alise pursuant to Rule 26(a)(1)(A)(iii). Thus, Alise is creating a farce that Alise's anemic responses to discovery are due to the timing of Tucker's requests, rather than Alise's steadfast unwillingness to produce documents.

immediately informed Berk that "I am willing to sit for my deposition on any day before or on the June 28, 2013 close of fact discovery, including this weekend or in the evening, except for those days that already have depositions scheduled in this matter". Ms. Tucker's deposition is currently scheduled for June 27, 2013.

Alise also purports to want to take the depositions of other Tucker personnel, such as legal assistant Ms. Roxanne Corkin and attorneys Mr. Nicholas Gansner, Ms. Kirstin Ives, and Ms. Elizabeth Larsen. Ms. Corkin's out-of-town deposition occurred on May 26th with lightning speed (a mere *eleven days* after Mr. Berk's first request to Tucker to take the deposition), because Tucker immediately accepted the date that McDonald proposed for the deposition. Meanwhile, despite Tucker having offered to schedule the depositions of Gansner, Ives, and Larsen since February 2013, these depositions have not occurred solely due to McDonald's recalcitrance. Berk, showing no concern for anyone else's schedule other than this own, cancelled the *out-of-town* deposition of Gansner scheduled for June 18, 2013 *less than 24 hours* before it was to occur. Separately, Ives and Larsen – also busy lawyers – offered multiple available dates and even voluntarily scoured their personal e-mails to produce documents responsive documents to Alise's grossly overbroad subpoenas *even though the Court quashed the subpoenas.* Then, Alise, akin to a student who waits until the last possible moment to study for an exam, awoke from her slumber and sought on three days' notice to cram the depositions of Ms. Tucker, Ms. Ives, and Ms. Larsen into the final week of discovery.

In short, in sharp contrast to Tucker's overwhelming obedience and compliance, Alise and McDonald have not simply ignored discovery, but rather have abused and exploited it, thereby corrupting this case and preventing Tucker from obtaining a fair trial on the merit of the parties' claims. Therefore, sanctions are necessary to cure the injustice.

Dated: June 26, 2013

                                                  Respectfully submitted,

                                                  /s/ Debra J. Tucker_____

                                                  One of the attorneys for the
Plaintiff and Counter-Defendant
The Tucker Firm, LLC and
Counter-Defendant Debra Tucker

Debra J. Tucker

THE TUCKER FIRM, LLC
1723 N. Halsted Street
Chicago, Illinois 60614
Phone (312) 202-0222
Facsimile (312) 202-0444
dtucker@thetuckerfirm.com

## **CERTIFICATE OF SERVICE**

      I, Debra J. Tucker, an attorney under oath hereby swear that on June 26, 2013 I served a copy of the foregoing Tucker's Brief in Support of its Motion for Relief under Rule 37 and this Certificate of Service on the Defendant and Counter-Plaintiff Kimberly Alise by filing the same with the Court by virtue of the Court's electronic filing system, which transmits said filing to the Defendant and Counter-Plaintiff Kimberly Alise's counsel and to all other persons who have an appearance on file in this lawsuit by electronic mail.

Mr. Richard N. Kessler
Mr. Peter T. Berk
McDONALD HOPKINS LLC
300 N. LaSalle Street, Suite 2100
Chicago, IL 60654
rkessler@mcdonaldhopkins.com
pberk@mcdonaldhopkins.com

*Counsel for Defendant and Counter-Plaintiff*
*Kimberly Alise*

Dated: June 26, 2013

                                            /s/ Debra J. Tucker_____

                                            Debra J. Tucker

                                            THE TUCKER FIRM, LLC
                                            1723 N. Halsted Street
                                            Chicago, Illinois 60614
                                            Phone (312) 202-0222
                                            Facsimile (312) 202-0444
                                            dtucker@thetuckerfirm.com

**EXHIBIT LIST**

A. Tucker's September 26, 2012 Letter

B. Alise Chronology, Notice of Deposition, and Letters

C. Guterman Chronology, Subpoenas, and Letters

D. Berk Chronology and Letters

E. Other Deponents' Chronology

F. Guterman's Recommendation Letter for Alise

G. Rule 26(a)(1) Objection Letters